### In re ATTLEBROOK PROPERTIES
a/k/a Longwood Towers.

### Bankruptcy No. 82–1962–JG.

United States Bankruptcy Court,
D. Massachusetts.

Dec. 28, 1983.

would have no effect on the ultimate result in these cases.

John Drew, Boston, Mass., for debtor.

Richard Glovsky, Boston, Mass., for claimant, Mary Lou Cordova.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

Pursuant to 11 U.S.C. Section 502(c)(1) the debtor requests that the Court estimate the disputed, contingent claim of Mary Lou Cordova, who has filed a proof of claim in the amount of one million one hundred thousand dollars ($1,100,000).

Prior to the filing, Mrs. Cordova brought a civil action in the United States District Court, District of Massachusetts seeking one million one hundred thousand dollars ($1,100,000) in damages from the debtor, Attlebrook Properties, the owner of the 300-unit apartment complex Longwood Towers, Herman Getzoff, the general partner of Attlebrook Properties, and Plaza Realty Investors, the managing agent of the apartment complex. Mrs. Cordova's complaint alleged unlawful sex discrimination, breach of her at will employment contract, sexual harassment, violation of her civil rights, retaliation for filing a discrimination complaint, abuse of process, and infliction of emotional distress.

The United States District Court allowed a real estate attachment of the debtor's property in the amount of one hundred thousand dollars ($100,000). Mrs. Cordova entered into an agreement for judgment with defendant Plaza Realty Investors and obtained eighteen thousand dollars ($18,-000). The United States District Court dismissed counts 3, 4, 5, and 6 of her complaint.

A hearing was held on July 28, 1983 at which time the Court heard testimony from Mr. Luther Allen, of the Massachusetts Commission Against Discrimination, Mrs. Cordova, the claimant, and Marjorie Lewis, the current manager of Longwood Towers. Although the claimant had intended to call Herman Getzoff as a witness, it now appears that Mr. Getzoff is unavailable because of illness, and therefore the Court has allowed debtor's motion to close the evidence.

Based upon the testimony of the three witnesses, the exhibits introduced, and all the credible evidence, the Court makes the following findings of fact.

Mary Lou Cordova was the operations manager of Longwood Towers from 1976 to 1980. She had been hired by the owner prior to Attlebrook, and continued in the same position when Attlebrook purchased the property in 1977. Her duties consisted of general supervision of the apartment complex, staff, repairs, tenant relations, execution of leases, and collection of rents. She was required to communicate on a weekly basis with Herman Getzoff, the principal of the debtor who lived in New York, and also to pick him up at and drive him to the Boston airport on the average of once a month. Mrs. Cordova makes general accusations that Mr. Getzoff sexually harassed her but in her testimony she only was able to point to several instances of offensive conduct by him towards her. I find that the debtor's agent Mr. Getzoff made four or five improper advances to Mrs. Cordova. Sometime in 1978 Mrs. Cordova mentioned that she needed a vacation and Mr. Getzoff responded that she could accompany him on a business trip to Phoenix, Arizona on an unspecified date in 1978. She testified Mr. Getzoff told her: "I would be a good lover to you." On another occasion Mr. Getzoff asked her to give him a backrub. Mrs. Cordova responded that she was not interested. Mrs. Cordova testified that after a budget meeting in New York at Mr. Getzoff's office, he attempted to put his arms around her and she resisted. He further commented that the couch in his office pulled out to become a bed. In August 1980 Mr. Getzoff put his hands on her

neck and in her hair while he was a passenger in her automobile.

Mrs. Cordova stated that these occurrences caused her psychological stress and adversely affected her physical health because she would suffer headaches, vomiting, and diarrhea in anticipation of his visits to Longwood Towers. Mrs. Cordova's numerous medical records were introduced into evidence. These show that she had a cancer operation in 1971 and a gall bladder operation in 1980. There is no evidence linking the 1980 medical problem with any harassment by Mr. Getzoff. Mrs. Cordova's health is now normal.

In early August 1980 Mrs. Cordova told Mr. McCarthy, Plaza's agent and Mr. Getzoff that she was quitting because of the building's many problems, one of which was the Edison Company's threat to shut off the electricity. She did not quit however, and continued to work until September 1980. On September 8, 1980 Mrs. Cordova received a call from Mr. McCarthy, of Plaza, who informed her that she was terminated because of her inability to get along with Mr. Getzoff. She was paid three weeks salary as severance pay.

On the date of termination her salary was $22,000 per year. In addition she received the equivalent of $15,000 per year in fringe benefits which included a rent-free apartment and medical insurance. Mrs. Cordova worked as a part-time secretary and sales clerk for the balance of 1980. In January 1981 she obtained a position with the International Society of Fire Instructors where her salary was $18,000. In late 1981 she became employed by MB Management with a salary of $22,000. This was increased to $28,500 which is her current salary.

When Mrs. Cordova was fired she moved from Longwood Towers to Natick and she took the furniture in her apartment with her. When the new manager attempted to lease the apartment she reported the missing furniture to Mr. McCarthy.

On December 4, 1980, Mrs. Cordova filed a complaint against Attlebrook, Plaza, and Getzoff with the Massachusetts Commission Against Discrimination alleging sex discrimination in employment. The complaint subsequently was amended to allege retaliation by the employers in their application for criminal process. After issuance of an investigator's report in the spring of 1981, Mrs. Cordova withdrew her MCAD complaint so that she could pursue her court action.

For the purpose of estimating the Cordova claim, it is my conclusion that Mrs. Cordova is unlikely to recover on her claims of retaliation and abuse process. It does not appear that the filing of the criminal complaint was retaliatory or an abuse of process. There was a good faith dispute between Attlebrook and Cordova as to the ownership of the furniture, and Attlebrook's application for process can not be considered malicious or in bad faith. It is likely that she will succeed against the debtor on her remaining claims for breach of her at will employment contract, infliction of emotional distress, and sex discrimination in employment. It is clear that Getzoff, her employer, made improper and offensive advances to Mrs. Cordova on four occasions, which caused her severe emotional distress, and which constitutes unlawful discrimination in employment. Moreover, in view of the time sequence between her refusal in August and her termination in September, and McCarthy's statement of reasons, it reasonably can be inferred that her discharge was related to her refusal to accede to Getzoff's advances, and therefore was a bad faith termination and a breach of her employment at will contract.

On the question of damages, for the purposes of estimating the Cordova claim only, I make the following findings. It appears that as a consequence of her termination, Mrs. Cordova lost salary of approximately $8,000 in 1980, $17,000 in 1981, $13,000 in 1982 and $7,000 in 1983, for a total of $45,000.

There was no medical or psychiatric evidence presented to permit a finding that her medical expenses or costs of a psychologist were necessitated by the conduct of the debtor's agent Getzoff. The evidence did show that Mrs. Cordova suffered severe

emotional distress with physical consequences as a result of Getzoff's demands.

Based upon the above findings, and based upon a review of her attorney's records in support of his request for attorney's fees, I estimate that Mrs. Cordova's damages, including those for lost salary, pain and suffering and attorney's fees, if they are assessable, will not exceed one hundred thousand dollars ($100,000).

Accordingly, pursuant to 11 U.S.C. Section 502(c)(1), the claim of Mary Lou Cordova is estimated in the amount of one hundred thousand dollars ($100,000).