**In re Rosemarie ANDREWS, Debtor.**

**Bankruptcy No. 86–03651S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 1, 1987.

---

Arthur L. Haywood, Community Legal Services, Inc., Phila., Pa., for debtor.

Mary Benefield Seiverling, Asst. Counsel, Dept. of Public Welfare, Harrisburg, Pa., for claimant.

Arthur P. Liebersohn, Phila., Pa., for debtors in *Camp* case.

Edward Sparkman, Phila., Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

■ The instant case presents the difficult and recurring issue of how a claim of reimbursement for past welfare benefits provided to a debtor by the Commonwealth of Pennsylvania, Department of Public Welfare (hereinafter referred to as "DPW"), is to be treated and evaluated in a Chapter 13 bankruptcy case. Following the recent Opinion of our brother, the Honorable Bruce Fox, in *In re Camp*, 78 B.R. 58 (Bankr.E.D.Pa.1987), in many of its holdings, we conclude that DPW does have a statutory, *in rem* claim against the property of a debtor owned at the time that assistance was received, and that assertion of this claim does not transgress 11 U.S.C. § 525(a). We are, however, less certain than Judge Fox as to the proper characterization of this claim as "unmatured" rather than "contingent," and we therefore request further briefing from all interested parties on the issues of the nature of the claim and the practical means for evaluating it.

The instant Chapter 13 bankruptcy case was filed on July 31, 1986. On September 9, 1986, DPW filed the Proof of Claim in issue, in the total amount of $11,664.30 and allegedly secured in part by a judgment lien in the amount of $5,000.00 against residential realty owned by the Debtor at 4527 North 18th Street, Philadelphia, Pennsylvania 19140.

On October 21, 1986, the Debtor filed a Plan amending an earlier filing on August 27, 1986. The amended Plan provided for payments of $70.00 monthly for twelve months and $136.00 monthly for forty-eight months thereafter. Distribution was to be made, first, towards pre-petition arrearages owed to the Debtor's first mortgagee, and the balance to all other creditors pro rata. This Plan was confirmed on September 10, 1987.

On November 6, 1986, upon the failure of DPW to respond to a Motion filed by the Debtor pursuant to 11 U.S.C. § 522(f)(1), DPW's lien on the Debtor's residential realty was avoided.

On April 21, 1987, the Debtor's instant Objection to DPW's entire Proof of Claim was filed, alleging that DPW "does not have the right to enforce the claim against the debtor and property of the debtor under applicable law." DPW opposed same in an Answer, and the matter came before

us for a hearing on June 25, 1987. At that time, in accordance with the expressed wishes of the parties, we ordered that the parties should file a Stipulation of Facts which would constitute the record on or before July 10, 1987, and Briefs in support of their respective positions on or before July 24, 1987 (the Debtor), and August 14, 1987 (DPW).

In addition to reciting the procedural history already stated above, the Stipulation provided that the Debtor, a widow, had purchased her residence with her late husband by the entireties on November 12, 1980, and was now the sole owner of the property. The fair market value of the premises was agreed to be $27,000.00. The home was encumbered by liens held by the following parties in the following respective amounts:

| | |
|---|---|
| Meritor Mortgage Co. | $11,958.62 |
| City of Philadelphia | 665.57 |
| Corestates Bank | 1,453.00 |
| Mid-Penn Consumer Discount Co. (hereinafter referred to as "Mid-Penn") | 8,077.37 |
| (This debt will be paid in full by credit life insurance on the Debtor's late husband) | |

As Judge Fox observes in *Camp*, in asserting a claim of reimbursement for welfare benefits received, DPW "has an extremely unorthodox unsecured claim," at 64, due to the peculiar wording of 62 P.S. § 1974(a), which gives rise to the claim and reads as follows:

§ 1974 Property of persons liable for expenses incurred for support and assistance

(a) Except as limited by subsection (c) hereof [relating to medical assistance], *the real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial, and for the expenses of the support, maintenance, assistance and burial of the spouse and unemancipated minor children of such property owner, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if a right or cause of action existed during the time such ex-*

*penses were incurred from which the ownership of such property resulted.* Any public body or public agency may sue the owner of such property for moneys so expended, and any judgment obtained shall be a lien upon the said real estate of such person and be collected as other judgments, except as to the real and personal property comprising the home and furnishings of such person, *which home shall be subject to the lien of such judgment but shall not be subject to execution on such judgment during the lifetime of the person, surviving spouse, or dependent children* (emphasis added).

We totally agree with the following conclusions of Judge Fox, relating to issues raised by the parties here as well as in *Camp:* (1) DPW's right of reimbursement is purely statutory, hence eliminating any argument by DPW that it has a broader common-law right to reimbursement than that enunciated in 62 P.S. § 1974(a). *See Camp*, at 62 n. 5; and (2) The claim of DPW, if any, is *in rem* and runs only against the property owned by the Debtor at the time that she received assistance. *Id.*, at 62–63, 64; but (3) Nevertheless, by the terms of 11 U.S.C. §§ 101(4) and 102(2), DPW does have a claim potentially cognizable under the Bankruptcy Code against the Debtor's property. *Id.*, at 63.

■ The Debtor here raises two arguments not considered by Judge Fox in *Camp*. First, she argues that, since her wages fund the Plan, DPW would, in receiving distribution of funds paid under the Plan, be effectively collecting reimbursement out of her wages, which is not authorized by 62 P.S. § 1974(a). This "circumvention" of the statutory restrictions on reimbursements is said to create a windfall to DPW solely due to the Debtor's bankruptcy filing, which is alleged to be violative of 11 U.S.C. § 525(a). The latter Code provision states as follows:

Sec. 525. Protection against discriminatory treatment.

(a) ... a governmental unit may not deny, revoke, suspend, or refuse to re-

new a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

There are two reasons why we reject this argument of the Debtor here. First and foremost, the Debtor has offered no proof of any additional wages which would be paid into her Plan by her as a result of the sustaining of DPW's claim. Her confirmed Plan contemplates a pro rata payment to all unsecured creditors, including DPW. She will therefore make the same payments out of her wages no matter what the validity of DPW's claim is. The only parties receiving direct adverse consequences from the sustaining of the claim would be the Debtor's other unsecured creditors. The potential of impact upon these parties is one reason why we request the Standing Chapter 13 Trustee, as representative of these parties, to make his views known before we render a final decision in this matter.

The other reason is that, assuming *arguendo* that the Debtor would be required to contribute more payments from her wages to fund the Plan on the contingency that DPW's claim is allowed, we question whether such an indirect impact flowing from the actions of a governmental unit constitutes a denial, revocation, suspension, or refusal to provide any sort of governmental benefit, which is proscribed by § 525(a). We have interpreted § 525(a) broadly, *In re Watts*, 76 B.R. 390, 402–06,

16 BCD 149, 157–60 (Bankr.E.D.Pa.1987), and indicated that its policies may outweigh the force of other Code provisions. *In re Sudler*, 71 B.R. 780, 786–87 (Bankr.E.D.Pa.1987); and *In re Metro Transportation, Inc.*, 64 B.R. 968, 975 (Bankr.E.D.Pa. 1986). However, except for the very contingent impact of possibly discouraging a party from filing a bankruptcy where (s)he might otherwise do so, and thus affecting but slightly the "fresh start" policy furthered by § 525(a), *see Watts, supra*, 76 B.R. at 405, 16 BCD at 159, we fail to see how the governmental action here is depriving the Debtor of any benefit, which is of course necessary to bring § 525(a) into play. Certainly here, where the validity of DPW's claim will not require any additional payments by the Debtor, we believe that the impact of the government's action upon any benefits it has provided or will provide to the Debtor is too faint to give rise to a defense to DPW's claim on the basis of § 525(a).

■ Secondly, the Debtor argues that DPW's claim is unenforceable on the basis of 11 U.S.C. § 502(b)(1), which provides as follows:

> (b) Except as provided in subsections (e)(2), (f), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured; ...

The Debtor argues that, since she continues to retain and live in the real estate against which reimbursement is obtainable with her dependent children, this section of the Code is implicated here due to the fact that DPW's claim is not presently collectible under the terms of 62 P.S. § 1974(a).

However, we note that § 502(b)(1) is limited in impact. It merely invalidates claims

to which defenses exist, under any applicable law or a contract between the parties. *In re Reagan*, 741 F.2d 95, 98 (5th Cir. 1984); and 3 COLLIER ON BANKRUPTCY, ¶ 502.02[1], at 502-24 to 502-25 (15th ed. 1987).

By its very terms, § 502(b)(1) does not render a claim unenforceable if the claim is either contingent or unmatured. Judge Fox, in *Camp*, concludes that DPW's claim is "unmatured." *See Camp*, at 63 & n. 6, 64-65. The Debtor argues that the claim "is neither contingent nor unmatured" because its claim "could only be collected if extremely unlikely events occur." Memorandum of Law in Support of Debtor's Objection to Proof of Claim of Department of Public Welfare, at 11. This statement seems to us to be a concession that the claim is at least contingent, coupled with an assertion that the contingencies that could give rise to its effectiveness are remote. It is therefore not surprising that the Debtor expends the balance of her Brief arguing, alternatively, that the claim *is* contingent but that the alleged unlikely contingencies that will result in its viability should prompt us to value the claim at the nominal sum of one ($1.00) dollar.

In sum, we agree with DPW's counter-response that its claim is at least contingent and hence is not precluded by § 502(b)(1).

Having joined Judge Fox in concluding, as he does in *Camp*, that DPW has some sort of cognizable claim against the Debtor, we are nevertheless unable to join, at least without the benefit of a further briefing and subsequent analysis from all interested parties on this point, the conclusion in *Camp* that DPW's claim is unmatured and should be effectively brought to maturity by evaluation of the Debtor's property interests which are subject to reimbursement at the time of the bankruptcy filing. *Camp, supra*, at 64. It seems to us that the date of the bankruptcy filing, where the Debtor, as here, specifically presents a confirmed Plan to retain her property, may be too soon. As the Debtor here points out, she may never transfer the property during her lifetime. We are not at all certain that a claim which quite conceivably

would rise only post-mortem can be classified as simply unmatured. Furthermore, the Debtor could quite conceivably convey her residence to one or more of her surviving dependent children, if any, during her lifetime; that person could become a welfare recipient; and that applicable statute might, in this situation, be utilized to prevent consummation of DPW's claim against the property from liquidation for generations.

Another factor, not presented by the facts in *Camp*, is the relationship of DPW's claim against the property to the various secured claims against the property. The Debtor argues that the sum of the liens against the property, including the mortgage of Mid-Penn, is $22,154.56, leaving her with a present equity of $27,000.00 less $22,154.36, or $4,855.64. DPW, meanwhile, argues that the Mid-Penn lien should be disregarded, that the liens total but $14,077.19, and that the Debtor's equity is in fact $12,922.81. Neither party addresses the issue of whether DPW's claim is measured by the entire value of the property or just the Debtor's equity therein. Also, neither addresses the contingency that the Debtor may subsequently encumber the property further, and what the impact of this may be. The amount of equity of the Debtor in the property at the time that she (or her children or her children's children's children) dispose of it would seem to us to be the accurate measure of DPW's claim.

We have carefully reviewed the caselaw which addresses the issue of when a claim is considered "contingent" or when it is considered "unmatured" or when it is in some other more definitive category. Most of these cases arise in the context of application of 11 U.S.C. § 109(e), which requires that only "non-contingent" debts can be considered in determining whether a debtor meets the threshold of having less than $100,000.00 of unsecured debt to thus be able to file under Chapter 13, *see, e.g., In re Albano*, 55 B.R. 363, 366-68 (N.D.Ill. 1985); *In re Perry*, 56 B.R. 663, 665-67 (Bankr.M.D.Ga.1986); and *In re Lambert*, 43 B.R. 913, 922-23 (Bankr.D.Utah 1984); or 11 U.S.C. § 303(b)(1), which allows only holders of claims which are "not contin-

gent" to be petitioning creditors in involuntary cases. *See, e.g., In re Trimble Co.,* 339 F.2d 838, 841–44 (3d Cir.1964); *In re Elsub Corp.,* 70 B.R. 797, 807–08 (Bankr.D. N.J.1987); and 66 B.R. 172, 177–88 (Bankr. D.N.J.1986); *In re Bowers,* 16 B.R. 298, 300–01 (Bankr.D.Conn.1981); and *In re All Media Properties, Inc.,* 5 B.R. 126, 132–33 (Bankr.S.D.Tex.1980), *aff'd per curiam,* 646 F.2d 193 (5th Cir.1981). We note that, in every one of the cases cited above, the courts found that the claims in issue were not contingent, confining the definition of this term strictly to liabilities in which "the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event and such future occurrence was within the actual or presumed contemplation of the parties at the time the original relationship of the parties was created," *All Media, supra,* 5 B.R. at 133, such as liability of a guarantor or a tort claim in which liability would exist only if so found by a court. *Id. See also In re Crisp,* 521 F.2d 172 (2d Cir.1975) (Claim of state for reimbursement of medical services held not "contingent" even though the claim would increase if the financial resources of the debtor increased).

It can be argued, as the court points out in *Albano,* 55 B.R. at 366, "that liability to pay *any* disputed debt does not arise unless and until a court enters a judgment ordering payment," and hence that, in theory, the definition of a "contingent" claim could be very broad. The narrow definition given to the term in interpreting § 109(e) and § 303(b)(1) may be attributable to policies, respectively, of restricting the use of the liberal benefits of Chapter 13 to only those clearly qualified to do so, and in allowing a wide latitude in identifying potential petitioning creditors in involuntary cases. These policies may not carry over to interpretation of the pertinent Code provision here, 11 U.S.C. § 502(c)(1), which provides as follows:

(c) There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or

(2) any right to payment arising from a right to an equitable remedy for breach of performance.

We note that there is a relatively small body of caselaw interpreting § 502(c)(1), which may also suggest an unwillingness to classify a claim as "contingent." In none of the cases known to us which do interpret this Code Provision, cited below, was the issue of whether the claim in issue was in fact "contingent" an issue, but rather the parties appeared to agree on at least that issue: *Bittner v. Borne Chemical Co.,* 691 F.2d 134 (3d Cir.1982) (stockholder of corporation involved in claims and counterclaims with debtor, whose claim district court ordered to be estimated); *In re Fox,* 64 B.R. 148 (Bankr.N.D.Ohio 1986) (claim of debtor as co-guarantor of claims against corporation in which he was a principal); *In re Baldwin United Corp.,* 55 B.R. 885 (Bankr.S.D.Ohio 1985) (brokers who provided loans in rehabilitation plan of debtor); *In re Attlebrook Properties,* 37 B.R. 338 (Bankr.D.Mass.1983) (pre-petition sex discrimination claim against debtor by former employee); and *In re Nova Real Estate Investment Trust,* 23 B.R. 62 (Bankr.E.D. Va.1982) (developer's claim against debtor).

These claims do establish that the effective time at which the claim is estimated is the date of the filing of the objection thereto, *Baldwin United,* 55 B.R. at 895, which, here, would be April 21, 1987. They also point out that the mandatory language of § 502(c)(1) requires the court to act promptly, in order that the relative rights of all creditors are quickly settled. *Nova Real Estate, supra,* 23 B.R. at 65. This latter factor requires that the court carefully determine the parameters of a truncated procedure for the estimation process. *See Baldwin United, supra,* 55 B.R. at 911–12; Comment, *Procedures for Estimating Contingent or Unliquidated Claims in Bankruptcy,* 35 STANFORD L.REV. 135 (1982).

The combination of (1) Our uncertainty as to whether DPW's claim is in fact "unmatured" or "contingent;" (2) The enlightenment provided by Judge Fox's analysis in *Camp,* which was not available to the par-

ties until very recently; and (3) The absence of imput from the parties who, in this case and perhaps others, have the greatest interest in opposing the claim of DPW, i.e., the other unsecured creditors of the Debtor,[1] causes us to frame an Order contemplating further briefing, by at least the parties and the Standing Chapter 13 Trustee, before we render a final decision in this matter.

In our accompanying Order, we therefore note only that we recognize that DPW has either an unmatured or contingent claim which is cognizable and must be measured by some means, and we request the parties to provide us with further assistance in this endeavor.

---

**1.** We note that, in *In re Morrison,* 69 B.R. 586, 589, 592 (Bankr.E.D.Pa.1987), we pointed out that the Trustee is normally the representative of all creditors and that his stance on an issue of interest to all creditors is generally accepted by the court unless the Trustee unreasonably or unjustifiably refuses to act on behalf of certain creditor interests.