**In re Herman GORDON, Debtor.**

**Bankruptcy No. 90–14006S.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 23, 1991.

---

Geri H. Gallagher, Haverford, Pa., for debtor.

Harriet K. Brumberg, Dennis P. Cohen, Asst. Dist. Attys., City of Philadelphia, Dist. Atty's Office, Philadelphia, Pa.

Joseph DiGuiseppe, Philadelphia, Pa., for City.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

At issue is whether an obligation of the Debtor arising out of a criminal sentence of restitution is a "contingent" debt, the gross balance of which should be counted in determining whether the Debtor meets the debt ceiling limitation for filing a Chapter 13 bankruptcy case set forth in 11 U.S.C.

§ 109(e). We reject the Debtor's contentions that, since the obligation is conditioned on his ability to pay and his survival, the debt is "contingent." Therefore, the instant case cannot continue to proceed under Chapter 13 of the Bankruptcy Code and will be dismissed unless the Debtor promptly files documents necessary to convert it to a Chapter 7 or a Chapter 11 case.

## B. FACTUAL AND PROCEDURAL HISTORY

HERMAN GORDON ("the Debtor") filed an individual Chapter 13 petition commencing the instant bankruptcy case on September 28, 1990. The Debtor's Chapter 13 Statement lists only two debts: a $6,000 "joint" obligation secured by a mortgage on his residence; and a $90,000 unsecured obligation owed to the "Adult Probation Office" as a "claim for restitution," the latter of which is designated as "contingent, unliquidated, and disputed." The Debtor's Chapter 13 Plan contemplated payments of $50 monthly for 36 months, which were to be distributed to Trustee's commissions of $180 and the "remainder to Adult Probation."

A hearing to consider confirmation of the Debtor's Plan was originally scheduled on February 19, 1991, and thereafter continued until April 9, 1991. On February 26, 1991, the Chapter 13 Trustee filed a motion to dismiss the case on the ground that the Debtor's Plan was not feasible. The Debtor answered the Trustee's motion by stating that he would file an Objection to the Proof of Claim of the Adult Probation Office to resolve the feasibility objection.

On March 13, 1991, the Debtor did indeed object to the Adult Probation Office's claim, which he recited, in his Objection, was filed in the amount of $999,999 rather than $90,000, on the grounds that the $999,999 amount was erroneous and without basis and that the claim was "contingent." The City of Philadelphia, answering the Objection, attached the unsecured Proof of Claim actually filed by Adult Pro-

bation Services, which was in the amount of $1,039,074.28, and asserted that (1) the Debtor was ineligible to proceed under Chapter 13 by reason of 11 U.S.C. § 109(e); and (2) the Debtor's restitution obligation was nondischargeable. The hearing on the Debtor's Objection to the Proof of Claim was scheduled on April 30, 1991, and the hearings on confirmation and the Trustee's motion were also continued until that date.

On April 30, 1991, an Assistant City Solicitor was joined by two Assistant District Attorneys in opposing the Debtor's Objection to the restitution claim. The Chapter 13 Trustee, joining the objectors, explained that, in this instance, his "feasibility" Objection referenced the presence of unsecured debts in excess of $100,000.[1] The parties agreed to submit both the Debtor's Objection to the Proof of Claim and the issue of the Debtor's eligibility for Chapter 13 to the court together by means of a Stipulation of Facts to be filed by May 8, 1991, and Briefs to be filed simultaneously by May 14, 1991.

When no Stipulation of Facts arrived on May 8, 1991, we contacted counsel and learned that such a Stipulation had been prepared, but had not been signed by the Debtor's counsel. While we were unable to reach the Debtor's counsel to confirm her concurrence with the Stipulation, we nevertheless directed the Assistant District Attorneys to file the Stipulation as proposed. In her Brief, the Debtor's counsel quotes from the contents of the Stipulation. On May 20, 1991, she belatedly advised us that she agreed to all of its contents except the statement of the total amount of the claim. However, she noted in her Brief that the Probation Department's records recited that figure, and she offered no alternative calculations of the figures recited in the Stipulation.

The Stipulation reads as follows:

1. On August 18, 1983, Herman Gordon, Debtor, then the owner of the International Coin Museum, 399 Market

---

1. *But see In re Fricker,* 116 B.R. 431, 436 (Bankr. E.D.Pa.1990) ("feasibility" is the term generally used by the Trustee to designate that the requirement of 11 U.S.C. § 1325(a)(5)(B)(ii) has

not been satisfied). The Debtor's response to the Trustee's Motion, see page 576 *supra,* indicates that the Debtor understood the nature of this objection in this instance.

Street, entered guilty pleas to the felon charges of Theft by Unlawful Taking or Disposition (2 Counts), Theft by Deception (2 counts), as well as Bad Checks.

2. On that date, the Honorable Angelo Guarino of the Court of Common Pleas of Philadelphia County imposed a criminal sentence as follows: two to four years incarceration with work release; twenty-one years probation; and restitution in the full amount of $1,039,274.78. The restitution is to be paid as follows: $15,000 per year or 20% of Herman Gordon's gross annual income whichever is greater. This money shall be paid to 115 International Coin Museum customers through the Probation Department.

3. For the same $1,039,274.78 theft, Donald Gordon, the debtor's son, was sentenced by the Honorable Leon Katz of the Court of Common Pleas on May 6, 1983 to incarceration, twenty-one years probation, and restitution. Restitution was ordered to be paid in the amount of $10,000 per year or 20% of Donald Gordon's annual gross income, whichever is greater.

4. Because of the $210,000.00 restitution ordered for Donald Gordon, Herman Gordon's restitution amount was accordingly reduced to $829,274.78.

5. From the imposition of sentence to the present time, Herman Gordon has made $95,000 in restitution payments:

| | |
|---|---|
| May 18, 1984 | $ 5,000 |
| August 24, 1984 | $15,000 |
| August 23, 1985 | $15,000 |
| August 22, 1986 | $15,000 |
| August 26, 1987 | $15,000 |
| August 22, 1988 | $15,000 |
| September 28, 1989 | $15,000 |

6. The restitution balance currently owed by Herman Gordon is $734,274.76.

## C. DISCUSSION

The determinative matter at issue is the Debtor's eligibility to proceed under Chapter 13 in light of 11 U.S.C. § 109(e), which reads as follows:

(e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.

The Debtor presents two arguments in support of his contention that the obligation in issue is "contingent" and should therefore not be counted towards the $350,000 debt ceiling set forth in § 109(e): (1) since criminal restitution is dependent upon a defendant's ability to pay, *Commonwealth v. Galloway*, 302 Pa.Super. 145, 161–62, 448 A.2d 568, 576–77 (1982); and *Commonwealth v. Fuqua*, 267 Pa.Super. 504, 510, 407 A.2d 24, 26 (1979), the Debtor's continuing ability to pay is a continuing, built-in precondition to such liability; and (2) since restitution "is not an award of damages," *id.* 267 Pa.Super. at 510, 407 A.2d at 26, it constitutes a strictly personal obligation which is conditioned on the Debtor's survival. Alternatively, he argues that, since he may be required to pay only $15,000 annually on this obligation, his debt, for purposes of Chapter 13, the duration of a plan in which is maximized at five years, 11 U.S.C. § 1322(c), should be measured at five times $15,000 annually, or $75,000.

■ We find that all of these contentions of the Debtor lack merit. Although the Defendant's ability to pay is undoubtedly an important factor to be considered by a state court in fixing a criminal sentence which includes restitution, once a sentence providing for payment of restitution is fixed by the court, as transpired here, it becomes a "claim," like any other, against the Debtor-defendant. *See Pennsylvania Dep't of Public Welfare v. Davenport*, —— U.S. ——, 110 S.Ct. 2126, 2132–33, 109 L.Ed.2d 588 (1990). At that point, the state court order, under the principles of *res judicata*, becomes binding upon the bankruptcy court in claims litigation, in the absence of the Debtor's viable contention of

lack of subject matter jurisdiction, collusion, or fraud in the state court proceedings. *See, e.g., Heiser v. Woodruff,* 327 U.S. 726, 736, 66 S.Ct. 853, 857, 90 L.Ed. 970 (1946); *Kelleran v. Andrijevic,* 825 F.2d 692, 694–95 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); and *In re Garafano,* 99 B.R. 624, 629–30 (Bankr.E.D.Pa.1989). No allegations of any absence of subject matter jurisdiction, collusion, or fraud have been made by the Debtor.

■ The Debtor errs in equating the $75,000 sums allegedly potentially payable to the creditor over the course of a plan with the amount of that creditor's "claim." A "claim" is the entire amount which a creditor contends is due and owing to it on an obligation, and not the amount payable to it on the claim over the course of a Chapter 13 plan. *Cf. In re Vitelli,* 93 B.R. 889, 894 (Bankr.E.D.Pa.1988); and *In re Small,* 65 B.R. 686, 689–92 (Bankr.E.D.Pa. 1986), *aff'd,* 76 B.R. 390 (E.D.Pa.1987). A claim is a "right to payment," even if that right is unliquidated, unmatured, contingent, or not capable of liquidation in a debtor's plan. 11 U.S.C. § 101(5)(A).

Therefore, it is clear that the correct amount of the claim of the Adult Probation Services, on the basis of the instant record, is the "restitution balance" of $734,274.76 recited in the proposed Stipulation of Facts. The only issue remaining open for discussion is whether the instant claim is "contingent," in which case it should not be considered for purposes of calculating the sums of pertinent claims for purposes of § 109(e).

The courts of this jurisdiction, *see In re Pennypacker,* 115 B.R. 504, 507 (Bankr.E. D.Pa.1990) (TWARDOWSKI, CH. J.); and *In re Andrews,* 78 B.R. 420, 425 (Bankr.E. D.Pa.1987), have consistently applied the articulation of the definition of a "contingent claim," originally set forth in *In re All Media Properties, Inc.,* 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), *aff'd,* 646 F.2d 193 (5th Cir.1981), as a

debt ... which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and ... such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.

■ As we noted in *Andrews, supra,* 78 B.R. at 425, quoting *In re Albano,* 55 B.R. 363, 366 (N.D.Ill.1985), the term "contingent," if read broadly, could embrace any debt which is disputed in any manner prior to the entry of a judgment against the debtor. However, the scope of the term "contingent claim" has been applied mainly to the "paradigmatic examples" of contingent debts, *i.e.,* debts arising from guarantees. *Id.* Simply because a debt is disputed by the debtor does not render it "contingent." *See, e.g., Albano, supra,* 55 B.R. at 568; *In re Sylvester,* 19 B.R. 671, 673 (9th Cir.BAP 1982); *Pennypacker, supra,* 115 B.R. at 506–07; *In re Teague,* 101 B.R. 57, 59 (Bankr.W.D.Ark.1989); and *In re Pulliam,* 90 B.R. 241, 244–46 (Bankr.N. D.Tex.1988). *But see In re Lambert,* 43 B.R. 913, 919–20 (Bankr.D.Utah 1984).[2] However, numerous cases have held that even "paradigmatic" guarantee claims are not contingent after a default by the primary obligor has occurred. *See In re Robertson,* 105 B.R. 504, 508 (Bankr.D.Minn. 1989); *Pulliam, supra,* 90 B.R. at 243; and *In re Flaherty,* 10 B.R. 118, 119 (Bankr.N. D.Ill.1981).

■ As we further noted in *Andrews, supra,* 78 B.R. at 425, the term "contingent" is generally not read broadly in construing § 109(e) because of a policy of "restricting the use of the liberal benefits of Chapter 13 to only those qualified to do so, ..." Furthermore, in the instant factual matrix, a judgment in the form of the state-court criminal sentence has already been entered against the Debtor. Consequently, the obligation in issue does not appear to be contingent under any defini-

---

**2.** It seems fair to this court that, if the debtor has a bona fide dispute to a claim, a determination of the validity of that claim should precede a § 109(e) dismissal of the debtor's Chapter 13 case. In effect, we are adhering to that procedure in rendering the instant decision.

tion of that term. *See In re Crescenzi*, 53 B.R. 374, 380 (Bankr.S.D.N.Y.1985), *aff'd*, 69 B.R. 64 (S.D.N.Y.1986).

It is apparent to us that neither of the contingencies posited by the Debtor as potentially impacting upon his liability, *i.e.*, the Debtor's reduced ability to pay in the future or his future survival, are the sort of occurrences described in *All Media Properties, supra*, as giving rise to "contingent claims." The Debtor's instant liability has already attached. The happening of the hypothetical contingencies will trigger *relief* from liability, as opposed to the happening of contingencies which will trigger liability. *Compare Andrews, supra*, 78 B.R. at 424–25 (welfare lien triggered only by transfer of residential realty may be contingent). *But see In re Camp*, 78 B.R. 58, 63 n. 6 (Bankr.E.D.Pa.1987) (welfare lien is not contingent) (FOX, J.). Therefore, the instant obligation of the Debtor to the Adult Probation Services in consideration of his sentence of restitution cannot be deemed "contingent."

While we have located no prior decision considering the issue of whether a criminal restitution obligation constitutes a "contingent" liability, we note that no contingency was found in several factually analogous cases. A debtor's liability for payment of workmen's compensation benefits to a worker's widow and children which would terminate upon the widow's remarriage or the children's death was determined not to be "contingent." *In re Perry*, 56 B.R. 663, 665–66, 668 (Bankr.M.D.Ga.1986). Parties who perpetrated fraudulent schemes similar to that of which the Debtor was found guilty by the state courts have not been successful in convincing bankruptcy courts to declare such liabilities "contingent." *See In re Furey*, 31 B.R. 495, 496–97 (Bankr.E.D.Pa.1983) (GOLDHABER, CH. J.); and *In re Troyer*, 24 B.R. 727, 730 (Bankr.N.D.Ohio 1982).

## D. CONCLUSION

We therefore have no hesitancy in concluding that the Debtor's non-contingent criminal restitution liability, while it must be reduced to $734,274.76, renders him ineligible to pursue Chapter 13. However, we also believe that it is just to allow the Debtor a brief period in which to decide whether he wishes to, alternatively, proceed under Chapter 7 or Chapter 11 of the Bankruptcy Code, particularly the latter, before simply dismissing the case. *See In re Lucoski v. Internal Revenue Service*, 126 B.R. 332, 334 (S.D.Ind.1991); and *In re Wenberg*, 94 B.R. 631, 635–37 (Bankr.9th Cir.1988), *aff'd*, 902 F.2d 768 (9th Cir.1990). Chapter 11 would appear to be available to the Debtor even if he is not presently engaged in business. *See In re McStay*, 82 B.R. 763 (Bankr.E.D.Pa.1988). *But see In re Toibb*, 902 F.2d 14 (8th Cir.1990), *cert. granted sub nom. Toibb v. Radloff*, —— U.S. ——, 111 S.Ct. 775, 112 L.Ed.2d 838 (1991).

An appropriate Order will be entered.

## ORDER

AND NOW, this 23rd day of May, 1991, upon consideration of the Stipulation of Facts presented by parties in reference to the Debtor's Objection to Proof of Claim of the Adult Probation Office and the Trustee's motion to dismiss the case because of nonconformity to 11 U.S.C. § 109(e), and the Briefs of the respective parties, it is hereby ORDERED AND DECREED as follows:

1. The Debtor's Objection to Claim No. 1 is SUSTAINED in part only, and that Claim is reduced to $734,274.76.

2. The Trustee's motion to dismiss this case is GRANTED subject to the terms of paragraph three *infra*.

3. The Debtor is given the opportunity to file with the Clerk of this court and serve upon interested counsel listed below and the court in chambers, on or before May 31, 1991, appropriate pleadings seeking to convert this case from Chapter 13 to Chapter 7 or Chapter 11 of the Bankruptcy Code. If he fails to make such a filing, the case will be dismissed in its entirety.