**In re Patrick Gordon MANNOR, Debtor.**

**Bankruptcy No. 94–30492.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division,
at Flint.

Dec. 13, 1994.

which comprises damages of $41,020.46 and $362.84 in interest, costs and attorney fees. Mannor filed for chapter 13 relief eight days later. His Schedule F indicates that Great Lakes Exteriors holds an unliquidated disputed claim in the amount of $41,020.46. Directly below the amount of the claim, the Debtor states in parentheses "none–0–admitted."

On August 15, 1994, Great Lakes filed an objection to confirmation of the Debtor's plan. Among other things, it claimed that the plan should not be confirmed because the debt owed to it renders the Debtor ineligible for chapter 13 relief pursuant to § 109(e) of the Bankruptcy Code. The Debtor argued in response that the Great Lakes debt should not be counted for purposes of determining eligibility under that statute. For the reasons which follow, Great Lakes' objection will be sustained.

### DISCUSSION

Section 109(e) states that "[o]nly an individual with ... liquidated, unsecured debts of less than $100,000 ... may be a debtor under chapter 13."[1] The Debtor conceded that the Great Lakes debt would put him over this limit, but raised two arguments as to why that debt should not be included in making the eligibility determination.

█ First, the Debtor claimed that all or some part of the debt is owed not by him, but by a corporation of which he was a principal. That is an issue which should have been raised in the state-court action. The Debtor failed to do so then, and he is precluded by the doctrine of *res judicata* from doing so now. *See, e.g., In re Bulic,* 997 F.2d 299 (7th Cir.1993); *Johnson v. Laing (In re Laing),* 945 F.2d 354 (10th Cir.1991); *Kelleran v. Andrijevic,* 825 F.2d 692 (2d Cir.1987), *cert. denied* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); *In re Gordon,* 127 B.R. 574, 577–78, 21 B.C.D. 1206, 25 C.B.C.2d 5 (Bankr.E.D.Pa.1991); *In re Brown,* 56 B.R. 954, 959 (Bankr.E.D.Mich.1986) ("*Res judicata* bars relitigation of the judgment of the

James L. Rowe, Flint, MI, for debtor.

Carl L. Bekofske, Chapter 13 trustee.

Leslie Kujawski Carr, Detroit, MI, for Great Lakes Exteriors, Inc.

### OPINION REGARDING CONFIRMATION OF CHAPTER 13 PLAN
### INTRODUCTION

ARTHUR J. SPECTOR, Bankruptcy Judge.

On April 20, 1994, Great Lakes Exteriors, Inc., obtained a default judgment in Oakland County circuit court against Patrick Mannor. The judgment is for $41,383.30, an amount

1. For cases filed after October 22, 1994, the limit on unsecured debt is $250,000. *See* P.L. 103– 394, 108 Stat. 4106, §§ 108 and 702.

state court as to the amount of the debt...."); *In re Bloomer*, 32 B.R. 25 (Bankr.W.D.Mich.1983); *cf. In re Kilpatrick*, 160 B.R. 560, 562 (Bankr.E.D.Mich.1993) (collecting authorities for the proposition that "[t]he preclusive effect of a state court ruling in federal court is determined by reference to the law of that state."); *In re Moon*, 116 B.R. 75 (Bankr.E.D.Mich.1990); *Schwartz v. Flint*, 187 Mich.App. 191, 194, 466 N.W.2d 357, *app. denied*, 439 Mich. 867 (1991); *cert. denied*, —— U.S. ——, 112 S.Ct. 1562, 118 L.Ed.2d 209 (1992) ("Res judicata applies to default judgments and consent judgments as well as to judgments derived from contested trials.").

▮ The Debtor's major argument is based on his contention that he was unaware of the state-court judgment when he filed his bankruptcy petition, and that at that time he believed in good faith that he personally owed nothing to Great Lakes. This belief is significant, the Debtor argued, because the case of *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751 (6th Cir.1985) requires the bankruptcy court to accept, for purposes of § 109(e), what the debtor concedes in her schedules is owed so long as the schedules are completed in good faith.

In *Pearson*, the debtors filed for bankruptcy after an arbitration award in the amount of $127,450.12 had been rendered against them and their corporation, jointly and severally. 773 F.2d at 752. Their "Chapter 13 statement listed the [creditor] as having both a secured and an unsecured debt, but stated that the amount of each was unknown and in dispute." *Id.* The arbitration award was based on breach of contract, the performance of which was secured by the accounting practice of the debtors' corporation. *Id.* at 751. The award "provided that the collateral—the accounts receivable, work papers, etc.—was to be transferred to [the creditor] upon failure of the Pearsons or Pearson, Inc. to satisfy the judgment within thirty days." *Id.* at 752. The creditor alleged that the debt·owed to it rendered the Pearsons ineligible for chapter 13 relief based on the $100,000 limit in § 109(e). *Id.* at 751. The court rejected this argument. *Id.* at 758.

In reaching its decision, the Sixth Circuit referred to the mode of analysis used for purposes of determining whether the minimum-amount-in-controversy requirement with respect to federal diversity jurisdiction is met. *Id.* at 757. Citing *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), the Sixth Circuit noted "that the amount claimed in good faith by the plaintiff controls unless it appears to a legal certainty that the claim is for less than the jurisdictional amount or the amount claimed is merely colorable." 773 F.2d at 757. *Pearson* concluded that "the same basic approach" as outlined in *St. Paul* should be used to decide eligibility under § 109(e). *Id.*

Under *Pearson*, then, a debtor's good-faith assertion as to how much she owes is "normally" accepted at face value. *See id.* ("Chapter 13 eligibility should *normally* be determined by the debtor's schedules checking only to see if the schedules were made in good faith.") (emphasis added)). But the qualifier "normally" implies that there are exceptions to this rule. And *Pearson* itself suggests one such exception: if "it appears to a legal certainty that" the amount owed is other than what the debtor says is owed, then the debtor's good faith is irrelevant. *Id.; cf. Gafford v. General Electric Co.*, 997 F.2d 150, 157 (6th Cir.1993) (In federal diversity jurisdiction cases, the "[p]laintiff's assertion of the amount in controversy is presumed to have been made in bad faith if it appears, to a legal certainty, that the original claim was really for less than the amount-in-controversy requirement.").

In this case, it is clear—legally certain—that when the Debtor filed for chapter 13 relief, he owed $41,383.30 to Great Lakes. It therefore makes no difference whether he was aware of the judgment at that point in time, or whether he believed in good faith that he owed nothing.

*Pearson* is frequently misinterpreted as requiring in all cases that the court not engage in an inquiry as to whether the unsecured debts exceed the limit but instead inquire into whether the debtors believed in good faith that they were eligible for chapter

13 relief. As noted, I believe that is not a universal directive.

The Sixth Circuit's overriding policy concern was to promote Congress' objective of establishing an efficient chapter 13 plan confirmation process. *See Pearson*, 773 F.2d at 757. The Court noted that this objective would be undermined if courts were to "allow an extensive inquiry in each case" regarding the debtor's eligibility for chapter 13 relief. It was with this consideration in mind that the court established the rule that, where there is a dispute regarding how much is owed for purposes of § 109(e), the debtor's version of the truth should generally be accepted by the court.

This approach was defensible in *Pearson* because, although "the amount owed by the Pearsons ... was probably established as $127,000 by the arbitration proceedings, [the award] by no means indicate[d] that the debt was unsecured to that extent and that the Pearsons would be ultimately held liable for that amount." *Id.* at 758. Short of a full-blown hearing to resolve those issues, the court's only alternative was to accept at face value either the creditor's or the debtor's assertion as to the amount of unsecured debt.

▆▆▆ In this case, I am not presented with the stark alternatives confronted by the *Pearson* court. The dispute between the Debtor and Great Lakes was resolved by a competent third party—the Oakland County Circuit Court—and in contrast to *Pearson*, there are no loose ends regarding "ultimate" liability[2] or whether the debt is unsecured.

I therefore need only refer to the state-court judgment, thereby avoiding not only a lengthy hearing on the merits of the parties' dispute over the amount owed, but also on inquiry into the Debtor's good faith—an inquiry which could prove to be just as lengthy as a hearing on the merits.[3]

Even *Pearson* itself does not apply the test that some claim it lays down. While *Pearson* does say that "it is wholly sufficient for the bankruptcy judge to have examined the petition and from that to have concluded that a good faith claim of eligibility was made," *id.*, that statement must be placed in context. Following that statement, the opinion emphasizes that the arbitrator's award acknowledged that the creditor held security and that the creditor itself filed a secured proof of claim. *Id.* These facts were not discernible from the schedules. It took at least a perfunctory hearing, at which these facts came out, for the trial court to find that the extent of the creditor's claim which was unsecured was in real doubt. Here, on the other hand, that same sort of perfunctory hearing led to the discovery that the dispute, if any, had been resolved by the state court, leaving nothing further for this Court to do.

For these reasons, I conclude that the Debtor is not eligible for relief under chapter 13 and will enter an order denying confirmation of the plan.

---

**2.** In expressing concern over whether the Pearsons "would be ultimately held liable for" $127,000, 773 F.2d at 758, it is unclear whether the Sixth Circuit was referring to the possibility that the amount owed would be reduced by: (1) amounts recovered from the creditor's collateral; (2) amounts recovered from the Pearsons' corporation; and/or (3) the court in "confirm[ing]" the arbitration award." *Id.* at 752. Since none of these possibilities is pertinent to this case, however, no purpose would be served in examining that issue in greater detail.

**3.** Good faith, of course, is a question of fact. *Society Nat'l Bank v. Barrett (In re Barrett)*, 964 F.2d 588, 591 (6th Cir.1992). Since the parties disagree on a question of fact, and since the issue arises in the context of a contested matter, F.R.Bankr.P. 3015, 9014; *see* 5 Norton Bankruptcy Law and Practice 2d, supplement to Vol.

5, pp. 81–82 (Nov., 1994), the parties would be entitled to discovery. *See* F.R.Bankr.P. 9014 (providing that in contested matters the Rules for discovery—7026, 7028–7037—"shall apply" unless the court orders otherwise.) Under the Federal Rules of Civil Procedure, unless the court shortens the time prescribed therein, discovery can take months. Thus in some cases *Pearson*'s cure can be worse than the disease.

And one cannot simply deprive the creditor of discovery or a meaningful day in court on this issue. A creditor's six-figure (or even larger) claim could be entirely wiped out if the debtor is found eligible for chapter 13, whereas, the creditor would have significant rights if the debtor were either denied bankruptcy relief, or forced to file chapter 11 (wherein the creditor could file its own plan or vote on the debtor's plan) or chapter 7, where the creditor might have a viable objection to, or exception from, discharge.