**In the Matter of Mark L. REDBURN, Debtor.**

**Bankruptcy No. GL95–83898.**

United States Bankruptcy Court, W.D. Michigan.

Feb. 29, 1996.

Donald B. Lawrence, Jr., Lansing, MI, for Mark L. Redburn ("Debtor").

Michael J. Panek, Lansing, MI, for Larry J. Broughton, et al. ("Objecting Creditors").

## *OPINION RE DEBTOR'S ELIGIBILITY FOR RELIEF UNDER CHAPTER 13*

JAMES D. GREGG, Bankruptcy Judge.

### I. ISSUE

This case is before the court on the Debtor's request for confirmation of his proposed

plan under chapter 13 of the Bankruptcy Code.[1] A group of unsecured creditors have objected to confirmation on the grounds that the Debtor is not eligible for relief because the Debtor's total "noncontingent, liquidated, unsecured debts" are in excess of the $250,000 limit set forth in § 109(e). The issue is whether a judgment debt which is subject to a nondischargeability action in a pending chapter 7 case should be deemed "noncontingent" and/or "liquidated" within the meaning of § 109(e) to determine chapter 13 eligibility.

## II. JURISDICTION

The court has jurisdiction over the Debtor's chapter 13 case. 28 U.S.C. §§ 157(b)(1) and 1334. The Debtor's request for confirmation of his proposed chapter 13 plan is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (L) and (O). *See generally* 1 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW & PRACTICE 2D § 4:34 at 4–212 (1994) ("Nothing could be more central to a bankruptcy case than an order confirming a plan of reorganization."). This opinion constitutes the court's findings of fact and conclusions of law. FED. R.BANKR.P. 7052.

## III. BACKGROUND

In January, 1987, Mark L. Redburn ("Debtor") formed a corporation under Michigan law under the name "R.A.L. Corporation." The corporate purpose was to rent various types of tools and equipment to the public. The capitalization was financed in part through two private stock offerings which raised more than $300,000 from approximately thirty investors. Thereafter, R.A.L. Corporation encountered financial dif-

ficulties. Twenty-three of the investors filed suit in state court against the corporation and against several individual defendants, including the Debtor. The complaint alleged claims for fraud, misrepresentation and breach of fiduciary duty in connection with the private stock offerings.

The Debtor represented himself in the state court litigation. He eventually agreed to settle the claims prior to trial. In September, 1991, the parties entered into a stipulation whereby the Debtor agreed to the entry of a judgment in favor of the investors in the aggregate amount of $303,219.80.[2] The stipulation included a specific allocation of the amount of each plaintiff-investor's share of the total judgment. The judgment was to be paid in four installments over a three year period with an annual interest rate of 7 percent on the unpaid balance. On October 7, 1991, an order of final judgment was entered in the State of Michigan, Ingham County Circuit Court, which incorporated the terms and conditions of the stipulation.[3]

The Debtor failed to make the payments as required. The plaintiffs took steps to execute on the judgment. Thereafter, in 1992, R.A.L. Corporation filed for protection under chapter 11. On December 2, 1992, the Debtor and his spouse filed a voluntary petition under chapter 7 in this district captioned, "*In re: Mark L. Redburn, d/b/a A–Z Rental and Pamela Jo Redburn f/k/a Pamela Jo Chamberlain,* Case No. SL–92–86573 (Bankr.W.D.Mich.)." The twenty-three judgment creditors timely filed an adversary proceeding in the Debtor's chapter 7 case to seek a determination that their judgment debts were nondischargeable under §§ 523(a)(2)(A) and (a)(4).[4] *See Arbrust-*

---

**1.** The Bankruptcy Code, as amended, is set forth in 11 U.S.C. §§ 101–1330. Unless otherwise noted, all future statutory references are to title 11 of the United States Code.

**2.** *See* Creditor's Reply Brief, Exhibit 2 (Stipulation for an Order of Final Judgment (9/30/91)).

**3.** *See* Creditor's Reply Brief, Exhibit 2 (Order of Final Judgment, File No. 91–68252–NZ (10/7/91)).

**4.** Section 523(a) provides in relevant part:
(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
  \*  \*  \*  \*  \*  \*

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained, by—
  (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

  \*  \*  \*  \*  \*  \*

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. 11 U.S.C. § 523(a)(2)(A) and (4).

*macher, et al. v. Redburn,* Adv. Proceeding No. 93–8098.

The judgment creditors moved for summary judgment on their non-dischargeability claims. In support of their motion, they cited language in the stipulated judgment by which the Debtor specifically admitted various misrepresentations made in connection with the sales of stock in R.A.L. Corporation.[5] In response, the Debtor claimed that he was not represented by counsel at the time he entered into the consent judgment, and that the admissions contained in the stipulation could not be used for other purposes.[6] The Debtor further argued that the fraud issues had not been actually litigated in the state court action; therefore, it was apparently argued that the stipulated judgment did not collaterally estop him from contesting whether the debts were dischargeable in the chapter 7 case. On October 5, 1993, Judge Stevenson issued an order denying the judgment creditors' motion for summary judgment, finding that "the State Court Judgment obtained by the Plaintiffs is not dispositive of the issue of the right of the Plaintiffs to have their claims against the Debtor excepted from discharge and that proofs will need to be entered to justify the relief requested." *Arbrustmacher, et al. v. Mark L. Redburn (In re Redburn),* Adv. No. 93–8098 (Bankr.W.D.Mich. Oct. 5, 1993) (Order Denying Motion for Summary Disposition).

Thereafter, approximately one-half of the original judgment creditors abandoned their nondischargeability claims. The twelve remaining creditors (hereinafter, the "Objecting Creditors") dismissed their claims of post-incorporation defalcation under § 523(a)(4). However, they continued to pursue a nondischargeable debt based upon fraud under § 523(a)(2)(A). The adversary proceeding was scheduled for trial on December 8, 9 and 12, 1994. On the eve of trial, the Debtor was hospitalized for an emergency liver transplant and the trial was adjourned. The trial was postponed a second time the week before the adjourned trial date, when the Debtor was hospitalized for emergency kidney surgery. Further attempts to settle the nondischargeability claims proved unsuccessful. Before the nondischargeability proceeding was brought to trial in the pending chapter 7 case, the Debtor filed this chapter 13 case on August 4, 1995.

The Debtor's chapter 13 plan calls for payments of $162.50 per month over the maximum period of 60 months with general unsecured creditors receiving approximately $8,000 collectively on their filed and allowed claims.[7] In paragraph 4a of the Statement of

---

5. Paragraph 4 of the Stipulation provides as follows:

> By way of example and not by way of limitation, the parties stipulate and agree that Defendant Mark L. Redburn misrepresented certain facts to the plaintiffs to induce the plaintiffs to invest monies in R.A.L. Corporation, to wit: Mark L. Redburn represented that two businesses owned by him (Groesbeck Rental and East Lansing Rental) were owned free and clear and that he would contribute said businesses to R.A.L. Corporation when, in fact, said businesses owed outstanding bills in the amount of approximately $80,000.00. Furthermore, Defendant Mark L. Redburn misrepresented the ongoing financial condition of R.A.L. Corporation in that he periodically issued "quarterly stock reports" which he knew to be false; it being his purpose to induce plaintiffs to continue to leave their money with R.A.L. Corporation.

*See* Creditor's Reply Brief, Exhibit 2 (Stipulation for an Order of Final Judgment).

6. Paragraph 1 of the Stipulation provides in part:

> "The parties stipulate and agree that the allegations of the Complaint as against Defendants Mark L. Redburn and R.A.L. Corporation are admitted, for purposes of this litigation only and not for any other purpose, and that judgment shall enter against, Defendants Mark L. Redburn and R.A.L. Corporation, jointly and severally, and in favor of the various plaintiffs as follows:....."

*See* Creditor's Reply Brief, Exhibit 2 (Stipulation for an Order of Final Judgment).

7. Debtor is currently employed on a part-time basis and earns approximately $650 per month. Because of his current disabilities, Debtor receives Supplemental Social Security benefits in the amount of $625.00 per month. The Debtor's six year old daughter also qualifies for $316.00 per month in SSI benefits. Mrs. Redburn earns a monthly salary $2,490. The combined family monthly income is $3,549 after taxes. The Debtor testified that his family's monthly expenses are $3,381.00, leaving a surplus of $167.50 available for proposed plan payments. *See* Debtor's Supplemental Budget Information (12/8/95).

Financial Affairs, the Debtor disclosed the existence of the nondischargeability action in the pending chapter 7 case. The Debtor also listed each of the twelve remaining Objecting Creditors in the chapter 7 case as "creditors holding unsecured nonpriority claims". *See* Schedule F. For each such Objecting Creditor, the Debtor checked the box marked "contingent" and the box marked "disputed", but did not check the box labeled "unliquidated". The amount of each Objecting Creditor's claim was stated to be "UNKNOWN." [8]

Each of the twelve remaining Objecting Creditors, who continue to pursue nondischargeability claims in the chapter 7 case, also filed a separate proof of claim in this chapter 13 case. All those claims are based on the specific amount awarded to each Objecting Creditor in accordance with the state court consent judgment. A copy of the stipulated judgment was attached to each claim. The claims also included the accrued amount of prepetition interest at an annual rate of seven percent in accordance with the terms of the judgment. Each one of the twelve claims filed by the Objecting Creditors contains precise dollar amounts for principal, interest and the total claim.[9] Thus, the total amount of the claims filed by the Objecting Creditors equals $274,648.15.[10]

## IV. DISCUSSION

The Objecting Creditors contend that the Debtor is not eligible for chapter 13 because their total claims exceed the $250,000 unsecured debt limit set forth in § 109(e). Based on this contention, each of those creditors has filed a separate objection to confirmation and a motion to dismiss. In response to these objections and in support of his requested confirmation, the Debtor has raised several arguments as to why those debts owed to the Objecting Creditors should not be considered. First, Debtor contends that the exact amount of these claims are "unknown" as listed in his schedules, and hence, they cannot be used to calculate the total amount of debts. The Debtor also apparently contends that the claims are not "liquidated" within the meaning of § 109(e). Finally, the Debtor argues that these claims are "contingent" because they are subject to nondischargeability actions in his prior pending chapter 7 case. Thus, the Debtor concludes that these debts do not qualify as "noncontingent" and "liquidated" under § 109(e) and do not count towards the $250,000 limit. Each of these arguments is addressed below.

### A. The Amount of the Debts: Are They "Unknown"?

█ Section 109(e) of the Bankruptcy Code states in pertinent part, "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 ... may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e).[11] The

| | | |
|---|---|---|
| Principal Amount | — | $25,833.44 |
| Additional Charges | — | 8,444.62 |
| Total | — | $34,278.06 |

---

8. Debtor's Schedule F also includes the Internal Revenue Service and the Michigan Department of Treasury as creditors holding unsecured nonpriority claims, and once again, the amount of the claims is described as "unknown". (The State of Michigan subsequently filed a general unsecured claim in the amount of $348.79 and a separate priority claim for $28,016.44.) The only unsecured claim which describes a specific dollar amount is the joint debt owed by the Debtor and his spouse for attorney's fees in the amount of $25,887.68. According to the proposed plan, this claim is to be paid on a pro-rata basis with the other unsecured claims and the remaining unpaid balance is to be paid by the non-filing spouse outside the plan.

9. For instance, the spokesman for the Objecting Creditors, Larry J. Broughton filed a proof of claim which described the amount of the debt as follows:

10. The breakdown of claims filed by the Objecting Creditors is as follows: Broughton—$34,278.06; Brehm—$17,141.86; Christensen—$25,712.66; Hoxie—$44,971.43; Kolp—$21,428.34; Lange—$8,570.08; McCloud—$38,563.15; Mohre—$8,570.08; Priest—$39,419.37; Simon—$8,570.08; Swindlehurst—$8,570.08; and Westcot—$18,852.96.

11. Section 109(e) provides in full:

Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the

United States Court of Appeals for the Sixth Circuit has held that "Chapter 13 eligibility should *normally* be determined by the debtor's schedules checking only to see if the schedules were made in good faith." *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 757 (6th Cir.1985) (emphasis added). Although "a court should rely *primarily* upon the debtor's schedules" (*id.* at 756 (emphasis added)), the court is not necessarily bound by the information contained in a debtor's schedules where " 'it appears to a legal certainty that' that the amount owed is other than what the debtor says is owed...." *In re Mannor*, 175 B.R. 639 (Bankr.E.D.Mich.1994) (citing *In re Pearson*, 773 F.2d at 757).

Similar to the instant case, *In re Mannor* involved a judgment creditor who objected to the confirmation of a chapter 13 plan on the grounds that the debtor did not meet the chapter 13 eligibility requirements. In that case, the creditor obtained a state court judgment against the debtor for approximately $40,000. The debtor filed for chapter 13 relief eight days later. In his schedules, the debtor described the judgment as an "unliquidated disputed claim in the amount of $41,-020.46" but also included parenthetically "non-0-admitted." *Id.* at 640. At the confirmation hearing, the debtor conceded that the judgment would put him over the unsecured monetary limit in § 109(e). Nevertheless, relying on the Sixth Circuit's opinion in *Pearson*, the debtor argued that the judgment should not be counted for purposes of determining eligibility because "he was unaware of the state-court judgment when he filed his bankruptcy petition, and that at that time he believed in good faith that he personally owed nothing to Great Lakes." *Id.* at 641.

After discussing the *Pearson* case, Judge Spector wrote:

> Under Pearson, then, a debtor's good-faith assertion as to how much she owes is

"normally" accepted at face value.... But the qualifier "normally" implies that there are exceptions to this rule. And Pearson itself suggests one such exception: if "it appears to a legal certainty that" the amount owed is other than what the debtor says is owed, then the debtor's good faith is irrelevant....

> In this case, it is clear—legally certain—that when the Debtor filed for chapter 13 relief, he owed $41,383.30 to Great Lakes. It therefore makes no difference whether he was aware of the judgment at that point in time, or whether he believed in good faith that the owed nothing.

*In re Mannor*, 175 B.R. at 641. Accordingly, because the amount of the judgment against debtor was "legally certain", it was determined that the debtor was not eligible under chapter 13 and confirmation of the debtor's plan was denied.[12]

In the instant case, although the Debtor acknowledged the existence of the debts owed to each of the twelve creditors, he failed to disclose the amounts owed. Instead, the Debtor described the amount of each claim as "unknown", even though he knew the exact amounts awarded to each of the judgment creditors as set forth in the stipulated state court judgment of October 7, 1991. The Debtor was also acutely aware of the claims that the Objecting Creditors had already filed in his chapter 7 case which were the subject of the pending nondischargeability proceedings. Moreover, the Debtor also knew about the seven percent interest provision in the stipulated judgment. The interest component was readily ascertainable. Thus, the Debtor possessed ample information from which he should have calculated and listed the debt amounts for each Objecting Creditor.

---

filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e).

**12.** The *Mannor* opinion does not discuss any debts other than the $41,383.30 judgment owed

to Great Lakes. Presumably, the debtor also owed other noncontingent, liquidated unsecured debts which, when added to the amount owed Great Lakes, exceeded the then applicable limit of $100,000 under § 109(e). For cases filed after October 22, 1994, the limit on unsecured debt was raised from $100,000 to $250,000. *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394 §§ 108 and 702, 108 Stat. 4106 (1994).

Similar to *In re Mannor*, it appears to "a legal certainty" that the total amount claimed by the creditors exceeds the limits on unsecured debt as set forth in § 109(e). The Debtor cannot circumvent this limitation on eligibility by simply ignoring what he knows and listing the amounts of the debts as "unknown" in his schedules. To decide otherwise would eviscerate the chapter 13 eligibility requirements. *See generally In the Matter of McGovern*, 122 B.R. 712, 714 (Bankr.N.D.Ind.1989) ("Congress did not intend that debtors would be given exclusive control over the accessibility to Chapter 13 or be permitted to circumvent its debt ceilings by the artful manipulation of the information contained in bankruptcy filings.").

■ The Debtor argues the amounts of the claims were properly characterized as "unknown" in the schedules because the debts are "disputed" and/or "contingent." This argument is to a *non sequitur*. Just because a claim is disputed or contingent, does not necessarily render the *amount* of the claim "unknown." Where, as here, the amounts claimed by the judgment creditors are known to the Debtor, at the time of filing, the Debtor is obligated to disclose the *amount* of each of the known claims and the combined total in his schedules.

In an analogous case, the Bankruptcy Court for the Middle District of Florida *sua sponte* imposed sanctions on the debtors' counsel where debtors failed to schedule a $412,000 state court judgment when seeking relief under chapter 13. *In re Cluett*, 90 B.R. 505 (Bankr.M.D.Fla.1988). In *Cluett*, the debtors initially filed for relief under chapter 11 following the imposition of a state court judgment against them in the amount of $412,000. The court found that the chapter 11 case was filed in bad faith and ordered the debtors to convert their case to chapter 7 or face dismissal. In response, debtors filed a motion to convert to chapter 13, however, the debtors did not include the $412,000 judgment in their schedule of liabilities. The creditors moved for sanctions against the debtors, contending that they knowingly and willfully violated the certification rule by signing the motion to convert and claiming eligibility for chapter 13 even though they

clearly exceeded the monetary limits under § 109(e). Counsel for the debtors argued that they were not obligated to include the state court judgment in their schedules because that judgment was under appeal and therefore was an unliquidated contingent debt which was excluded from the § 109(e) eligibility computation.

In rejecting this argument, the *Cluett* court concluded, "the judgment obtained by Smith clearly represents a liability which is fixed and which is noncontingent and remains a final and enforceable judgment until it is reversed, if ever, upon appeal." *In re Cluett*, 90 B.R. at 507. Based on this conclusion, the *Cluett* court found the debtors had violated the certification requirements of Rule 9011. Nevertheless, the court denied the motion for sanctions against the debtors because the debtors had relied on the advice of their attorney in omitting the judgment from their chapter 13 schedule. The court, however, then *sua sponte* imposed a $500 sanction on the debtors' counsel because he also signed the motion to convert to chapter 13 even though he knew that the debtors were subject to a judgment that exceeded the eligibility limits in § 109(e).

The issue of whether the debts owed to the Objecting Creditors are "contingent" or "unliquidated" is addressed below. Regardless of the nature of the debts, the *amount* of the debts were known to the Debtor and should have been included in his schedule of liabilities. Under these circumstances, the failure to include the amounts of the debts represents a violation of the good faith standard set forth in *Pearson*, and thus, the court shall look beyond the Debtor's schedules in determining eligibility under § 109(e). *See generally, In re Pearson* at 757 ("[A] court should rely primarily upon the debtor's schedules *checking only to see if the schedules were made in good faith* on the theory that section 109(e) considers debts as they exist at the time of filing, not after a hearing." (emphasis added)). The court rejects the Debtor's disingenuous argument and finds good faith is lacking in the preparation and filing of his chapter 13 Schedule F. Therefore, for purposes of determining Debtor's eligibility for chapter 13, this court finds that the debts

owed to the Objecting Creditors are equal to the amounts set forth in the claims filed by the Objecting Creditors.[13]

### B. *The Nature of the Debts.*

Having determined that the *amount* of the debts owed to the Objecting Creditors, this court must still examine the *nature* of the debts; i.e., do they represent "noncontingent, liquidated, unsecured debts" within the meaning of § 109(e)? In accordance with the principles set forth in *In re Pearson,* the court should look first to the Debtor's schedules to determine how the debts should be properly characterized. In his Schedule F, the Debtor identified the debts owed to the judgment creditors as "disputed" and "contingent"; however, the Debtor .did *not* mark the box labeled "unliquidated." Thus, the Debtor's schedules give rise to the negative inference that the debts are *not* "unliquidated." Nevertheless, in his brief in support of confirmation, Debtor curiously and confusingly argues, "these debts are *not* liquidated, are legitimately contested, and, therefore, the standard is met." *See* Debtor's Brief Supporting Confirmation of Debtor's Chapter 13 Plan, p. 16 (emphasis added).

#### 1. *Disputed vs. Undisputed.*

For purposes of determining eligibility under section 109(e), it is immaterial whether or not the debt is "disputed." The word "disputed" is not included in the list of adjectives which modify the word "debt" in § 109(e). Rather, the proper inquiry is whether the unsecured debts are "liquidated" and "noncontingent" as required by the statute. *See generally, In the Matter of Knight,* 55 F.3d 231, 234–35 (7th Cir.1995) ("[W]e conclude that a disputed claim is a debt to be included when calculating the § 109(e) requirements." (citing 1 NORTON, *BANKRUPTCY LAW & PRACTICE 2D* § 18:12 at 18–43)). *See also Nicholes v. Johnny Appleseed of Washington (In re Nicholes),* 184 B.R. 82, 89 (9th Cir. BAP 1995) ("Debts which are merely disputed are presumably included in the § 109(e) limitation calculation."); *Craig Corp. v. Albano (In re Albano),* 55 B.R. 363, 368 (N.D.Ill.1985) ("Merely because a debtor dis-

putes a debt, or has defenses or counterclaims, that does not render that debt contingent or unliquidated.").

*Nicholes* also addressed the relationship between the concepts of "disputed" and "liquidated" in the context of § 109(e):

> [W]e hold that the fact that a claim is disputed does not per se exclude the claim from the eligibility calculation under § 109(e), since a disputed claim is not necessarily unliquidated. So long as a debt is subject to ready determination and precision in computation of the amount due, then it is considered liquidated and included for eligibility purposes under § 109(e), regardless of any dispute. On the other hand, if the dispute itself makes the claim difficult to ascertain or prevents the ready determination of the amount due, the debt is unliquidated and excluded from the § 109(e) computation.

*In re Nicholes,* 184 B.R. at 90–91.

In this case, the Debtor's schedules indicate the debts owed to the Objecting Creditors are "disputed". However, the exact amounts of those debts are reflected in the stipulated judgment. The Objecting Creditors' respective judgment amounts, as of the chapter 13 filing date, using the applicable interest rate of seven percent, are easily calculated. Applying *Nicholes,* the debts owed to the creditors are "subject to ready determination and precision in computation of the amount due." *See supra.* Therefore, these debts may be counted in the eligibility determination under § 109(e), even assuming they are "disputed" by the Debtor. *See In re Albano,* 55 B.R. at 368 ("Surely no debtor can be permitted to shoehorn himself or herself into Chapter 13 merely by disputing unsecured debts.").

#### 2. *Liquidated vs. Unliquidated.*

The facts in this case are similar to those in *In re Troyer,* 24 B.R. 727 (Bankr.N.D.Ohio 1982). In that case the debtor had entered into a negotiated plea agreement in which he admitted that he had "intentionally deceived and defrauded" numerous investors in connection with the trading of futures and com-

---

**13.** *See, supra,* note 10.

modities. That debtor then filed a chapter 13 case. Several creditors objected to the debtor's proposed plan on the grounds that the total amount of the claims exceeded the § 109(e) unsecured debt limit. In denying confirmation, the court held in part:

> As Troyer has admitted the conversion of $265,000 of his investors' money, it cannot be said that the claims of his investors are contingent or unliquidated to the extent of $265,000. *That Troyer may have defenses or counterclaims regarding the claims of his investors would not affect the liquidated character of the claims.* As Troyer has admitted having unsecured liquidated, noncontingent claims substantially in excess of $100,000 against him, he is not eligible for Chapter 13 relief pursuant to 11 U.S.C. Section 109(e).

*In re Troyer,* 24 B.R. at 730–31 (emphasis added).[14] *See also* 1 NORTON, NORTON BANKRUPTCY LAW & PRACTICE 2D § 18:12 at 18–48 ("Where the debtor has admitted liability and specific amount, the debt is liquidated and is included in the Chapter 13 eligibility calculation." (citing, *inter alia, In re Troyer, supra* )).

In this chapter 13 case, the Debtor entered into a state court consent judgment. He stipulated that he had made certain misrepresentations in order to induce the defrauded creditors to invest in his company. In the judgment, the Debtor agreed to pay them an aggregate amount of $303,219.80. At the confirmation hearing in this case, Debtor's counsel suggested that the amounts which were awarded to each plaintiff in the stipulated judgment are not accurate. It is alleged they do not truly reflect the actual losses incurred by the Objecting Creditors' as a result of their investments with R.A.L. Corporation. Thus, the Debtor now collaterally attacks the state court judgment.

While the ultimate issue of nondischargeability remains undecided in the related chapter 7 case, the *amount* of the debt was fixed by the state court judgment and that judgment is binding on this court. *See Rally Hill Productions, Inc. v. Bursack (In re Bursack),* 65 F.3d 51, 53 (6th Cir.1995) ("The principles of full faith and credit reflected in [28 U.S.C.] § 1738 generally require 'that a federal court must give a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.' ") (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984)); *Sparks v. Adams (In re Adams),* 147 B.R. 407, 418 n. 27 (Bankr.W.D.Mich.1992), *aff'd Adams v. Sparks (In re Adams),* Case No. 1:93–CV–141 (W.D.Mich., October 14, 1993) (a bankruptcy court is bound by a state court judgment determining the amount of a creditor's debt); *Brown v. Sachs (In re Brown),* 56 B.R. 954, 959 (Bankr.E.D.Mich.1986) ("Res judicata bars relitigation of the judgment of the state court as to the amount of the debt, even though the dischargeability of the debt itself can only be decided in the bankruptcy court."). Thus, regardless of whether or one or more of the debts may be dischargeable in chapter 7, the precise amounts of the debts are readily ascertainable. Therefore, the debts must be included as "liquidated" in the chapter 13 eligibility determination.

### 3. *Contingent vs. Noncontingent.*

■ The final issue raised is whether the debts are "noncontingent" within the meaning of § 109(e). As noted above, the Debtor marked the debts as "contingent" in his schedules, but did not mark the box labeled "unliquidated." Conversely, in his written argument, the Debtor seems to have conceded that the debts were "noncontingent".[15] In final argument, Debtor's counsel reversed course again and argued that the debts are

---

**14.** The court also set forth several alternative grounds for denying confirmation including the finding that the plan had not been filed in "good faith" because the debtor would have profited from his fraudulent wrongdoing and that one of the primary purposes of filing the chapter 13 was to secure a discharge of debts that were nondischargeable under a chapter 7 liquidation. *In re Troyer,* 24 B.R. at 731.

**15.** In a footnote to his supplemental brief, the Debtor's counsel states, "Redburn does not contest that the investors' claims in this case are noncontingent." *See* Supplemental Memorandum of Law Supporting Confirmation of Debtor's Plan, p. 3, n. 2.

"contingent". In any event, the gravamen of the Debtor's argument is that the debts owed to the Objecting Creditors should not be included in the eligibility calculation because those debts are now subject to nondischargeability actions in the pending chapter 7 case. For the reasons set forth above, the debts are clearly "liquidated". The only remaining issue is whether the debts owed to the judgment creditors are "noncontingent".

■■■ Neither the Bankruptcy Code, nor the legislative history provide a definition for the term "contingent" or the negative form "noncontingent" which appears in § 109(e). *See generally* 1 NORTON, NORTON BANKRUPTCY LAW & PRACTICE 2D § 18:12 at 18–44 (1994). However, it is well-settled that "a debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition." *In re Nicholes*, 184 B.R. at 88 (citing *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir.1987)). Conversely, a contingent debt is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which *will trigger the liability of the debtor* to the alleged creditor." *In re Fostvedt*, 823 F.2d at 306 (quoting *Brockenbrough v. Commissioner*, 61 B.R. 685, 686 (W.D.Va.1986) (emphasis added)).

The Objecting Creditors' claims are set forth in the state court stipulated judgment, entered on October 7, 1991. This judgment was entered prior to both the Debtor's chapter 7 case and this chapter 13 case. The Debtor's liability to the Objecting Creditors was fixed prior to Debtor's bankruptcy. There is no further event necessary to trigger the Debtor's liability.

The Debtor has not cited any cases to support the argument that his debts are "contingent" in determining eligibility for chapter 13 cases merely because the debts may eventually be deemed dischargeable in his prior chapter 7 case. Although no reported case has been found that is directly on point, respected commentary seems to support the conclusion that the debts became "noncontingent" at the time the state court stipulated judgment was entered against the Debtor and the debts remain "noncontingent" even though they are subject to the possibility of discharge in the pending chapter 7 case:

> A majority of courts have correctly concluded that a state court judgment against the debtor, on appeal on the date of the petition, is not contingent, though it may be still subject to dispute. That the debtor has counterclaims, setoffs, affirmative defenses or mitigating circumstances does not render the underlying claim against the debtor contingent.

1 NORTON, NORTON BANKRUPTCY LAW & PRACTICE 2D § 18:12 at 18–45 (1994) (citations omitted).

■■■ Although this chapter 13 case does not involve a state court appeal, the above statement is somewhat analogous to the facts herein. A noncontingent and liquidated state court judgment debt is not turned into a "contingent" debt merely because an appeal is lodged by a debtor. Likewise, the noncontingent liquidated state court judgment debt should not be transformed into a "contingent" debt because a debtor files for chapter 7 and a nondischargeability action is pending in the bankruptcy court. In other words, just because a debt may ultimately be deemed nondischargeable in a pending chapter 7 case, does not mean that the debt is "contingent" for purposes of determining eligibility for chapter 13.

This conclusion is based in part on the interpretation that the debt remains nondischargeable pending the outcome of the adversary proceedings in the chapter 7 case. Does the Bankruptcy Code support this interpretation? Under § 524, a bankruptcy discharge voids any state court judgment to the extent the judgment determines a debtor's personal liability and automatically enjoins a creditor from acting to collect such a discharged debt.[16]

---

**16.** Section § 524 states in pertinent part:

(a) A discharge under [the Bankruptcy Code] (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ... [and] (2) operates as an injunction against ... an act, to collect, recover, or offset any such debt as a personal liability of the debtor...."
11 U.S.C. § 524(a).

It could be argued that *all* of the debts are discharged at the time the order of discharge is entered in the chapter 7 case, subject to reinstatement if the debts are eventually determined to be nondischargeable in the pending adversary proceeding. Under this interpretation, the debts could arguably be deemed "contingent" on the outcome of the nondischargeability action in the chapter 7 case, and thus, the debts would not be considered for purposes of determining chapter 13 eligibility under § 109(e). Conversely, if it is assumed that the debt remains nondischargeable during the pendency of the chapter 7 adversary proceeding, the debt is more properly characterized as "noncontingent". Therefore, it should be counted in determining chapter 13 eligibility. Thus, the analysis of the chapter 13 eligibility issue turns in part on the following question: When does a chapter 7 discharge become effective regarding a debt subject to pending § 523(a)(2)(A) fraud nondischargeability litigation? During the pendency of such litigation, the debt may be characterized as "in limbo". While in this status, should the debt be considered as discharged subject to defeasance by a judgment of nondischargeability or, should it be considered as not discharged subject to defeasance by a judgment of dischargeability?

One commentator suggests that the latter view is proper. "[The discharge provisions of § 524] apply to those debts for which complaints to determine dischargeability were filed and, *after trial*, were held by the bankruptcy court to be dischargeable." 3 LAWRENCE P. KING, COLLIER ON BANKRUPTCY

¶ 524.02 at 524–17 (15th ed. 1995) (emphasis added). Another commentator states:

> A bankruptcy discharge "releases" the debtor from liability on outstanding obligations. While this description is an oversimplification, it captures a significant element of discharge. The discharged bankruptcy debtor is released from creditor debt collection activity or the threat of such activity.... Although the debtor is "released" from the debt, the debt itself is not extinguished. This distinction becomes important where third-party liability exists and where the Code permits a debtor to retain property subject to a valid security interest.
>
> The essential feature of a bankruptcy discharge is that it establishes a legal right not to pay a debt.

3 NORTON, NORTON BANKRUPTCY LAW & PRACTICE 2D § 48:1 at 48–3 (1995).

Under § 524(a)(1) and (2), a debt is not "released" i.e., does not become ultimately unenforceable, until such time that a chapter 7 nondischargeable debt litigation is resolved in favor of a debtor. While the discharge of a debt remains in limbo, the debtor remains subject to "debt collection activity or the threat of such activity".[17] Thus, the existing nondischargeable debt is not "contingent" on the outcome of the chapter 7 nondischargeability proceeding.

If the law were construed to mandate that a debt which is subject to a nondischargeability action is discharged until such time as the bankruptcy court ruled it was nondischargeable, an anomaly would result. In a subse-

---

17. Of course, the automatic stay imposed by § 362 prevents a creditor from taking action in the state court. However, the creditor is not prohibited from commencing or continuing actions in the bankruptcy court in which the case is pending. *Civic Center Square, Inc. v. Ford (In re Roxford Foods, Inc.)*, 12 F.3d 875, 878 (9th Cir. 1993) (automatic stay does not apply to suit commenced in same court where bankruptcy case is pending); *Teerlink v. Lambert (In re Teerlink Ranch, Ltd.)*, 886 F.2d 1233, 1237 (9th Cir. 1989) (automatic stay does not operate against the court with jurisdiction over a debtor); *Prewitt v. North Coast Village, Ltd. (In re North Coast Village, Ltd.)*, 135 B.R. 641, 643 (9th Cir. BAP 1992) (The automatic "stay does not apply to

proceedings commenced against the debtor in the bankruptcy court where the debtor's bankruptcy is pending.... [T]he application of the stay to proceedings against the debtor in the home bankruptcy court would be illogical and would not serve the purposes underlying the automatic stay."); *Sears Roebuck & Co. v. Hodges (In re Hodges)*, 83 B.R. 25, 26 (Bankr.N.D.Cal. 1988) ("As a matter of law ... a nondischargeability action can never violate the automatic stay."). Indeed, in the Debtor's bankruptcy cases in this district, the Objecting Creditors have continued their debt collection efforts in the chapter 7 case; they have also litigated what is tantamount to collection efforts, by filing their objections to confirmation and motions to dismiss, in this chapter 13 case.

quent contemporaneously pending chapter 13 case, the affected creditor would not then hold a "claim" and would arguably be unable to pursue its rights. Such an analysis is inconsistent with the fundamental concepts of "debt" and "claim" as they are defined in the Bankruptcy Code.

■ The meaning of "debt" and "claim" are coextensive. *Pennsylvania Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990). Section 101(12) defines "debt" as a "liability on a claim." The term "claim" is defined under § 101(5)(A) as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured." Until such time as the "right to payment", i.e., the "claim", under § 101(5) is defeated, the "liability on [the] claim", i.e., the "debt" under § 101(12) remains. The proper conclusion is that a debt (in this case, a noncontingent liquidated debt) is not discharged until after the trial in the chapter 7 proceeding when the bankruptcy court holds the debt to be dischargeable. It is at this time when any state court judgment is voided, pursuant to § 524(a)(1), and the discharge injunction becomes effective, under § 524(a)(2). It is also at this time that there is no longer a "liability on the claim" and the "debt" is therefore not counted for chapter 13 eligibility. However, so long as the debt remains nondischargeable, the creditor continues to hold a "right to payment" and the debtor remains "[liable] on a claim." Accordingly, the judgment held by the Objecting Creditors, even though in limbo in the chapter 7 nondischargeability litigation, constitutes a "debt" within the meaning of § 109(e), and counts toward the eligibility limits for chapter 13.

■ In summary, the Objecting Creditors' claims, now subject to the chapter 7 nondischargeability actions, are not *now* discharged. The Debtor's mishmash of semantic contentions regarding the terms "disputed", "contingent", and "unliquidated" does not suffice to satisfy or circumvent the chapter 13 eligibility requirements. An otherwise liquidated and noncontingent debt does not become "contingent" simply because of the pendency of a chapter 7 nondischargeability action. To rule otherwise would invite abuse of the chapter 13 bankruptcy process.

The Objecting Creditors' debts are "noncontingent" and "liquidated" within the meaning of § 109(e) of the Bankruptcy Code. When all of the Debtor's noncontingent liquidated debts are added together, the total amount exceeds the unsecured debt limit of $250,000. Accordingly, the Debtor is not eligible for relief under chapter 13.[18]

## V. CONCLUSION

For the foregoing reasons, an order will be entered denying confirmation of Debtor's proposed plan and dismissing the Debtor's chapter 13 case.

---

18. Because the Debtor does not qualify for chapter 13 relief, the court will not address the Objecting Creditors' argument regarding the Debtor's asserted lack of good faith in proposing his plan.