In re Donald and Karen
TABOR, Debtors.

Bankruptcy No. 98–52387.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

March 29, 1999.

Terrence J. Steel, Akron, OH, for debtors.

Harry J. Cummings, Uniontown, OH, Gregory M. Lichko, Roy J. Schechter, Cleveland, OH, for Todd and Kurt Schumacher.

Jerome Holub, Akron, OH, Chapter 13 Trustee.

Amy Goode, Office of the U.S. Trustee, Cleveland, OH, for United States Trustee.

MARILYN SHEA–STONUM, Bankruptcy Judge.

This matter came before the Court on the jurisdictional issue raised regarding the eligibility of Donald and Karen Tabor (together, "Debtors") to be chapter 13 debtors based on the potential that Debtors' noncontingent, liquidated, unsecured debt exceeds the limit under 11 U.S.C. § 109(e) for eligibility to file a chapter 13 case. This issue was raised in motions to dismiss filed by several creditors as well as in objections to confirmation filed by several creditors and the chapter 13 trustee (the "Trustee"). The Court will address the matter in the context of the Trustee's objections to confirmation, which were the

subject of an evidentiary hearing held March 17, 1999.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(a) and (b)(1) and by the Standing Order of Reference entered in this District on July 16, 1984.

## I. FINDINGS OF FACT

### A. *The Filing of Debtors' Case and Debtors' Schedules*

On August 3, 1998, Debtors filed a joint petition under chapter 13 of the Bankruptcy Code. Debtors' Schedules E and F list noncontingent, liquidated, unsecured debts in the aggregate amount of $104,774.22. Debtors' Schedules list two other unsecured debts of Mr. Tabor which the Schedules indicate are contingent, unliquidated and disputed: a debt to Harry J. Cummings in the amount of $1,000.00 and a debt to Kurt and Todd Schumacher in the amount of $78,000.00.

### B. *The Claims of Kurt and Todd Schumacher*

In contrast to the amount indicated in Debtors' Schedules, Kurt and Todd Schumacher (together, the "Schumachers") have filed a joint proof of claim asserting that they hold unsecured claims which they appear to characterize as being the joint responsibility of Debtors in the aggregate amount of $233,494.31 as of August 4, 1998 (the "Schumacher Claim"). Attached to the Schumachers' proof of claim are two Note and Pledge Agreements, both dated November 6, 1990 and providing for interest in the amount of 12% per year (together, the "Notes"). The Note to Kurt Schumacher is in the principal amount of $50,000.00; the Note to Todd Schumacher is in the principal amount of $32,000.00. [Trustee's Exhibits A and B]

Donald Tabor asserts that he is not individually liable on the Notes, and thus that the Schumacher Claim should not be included when evaluating whether Mr. Tabor exceeds the unsecured debt limit to be a chapter 13 debtor. In support of this contention, Mr. Tabor notes that the name "DBK Consultants, Inc." floats above the signature lines on each of the Notes. However, although the name "DBK Consultants, Inc." appears above the signature lines, it is not referenced in the body of the Notes. The name "Donald R. Tabor" appears below the signature lines, and Mr. Tabor's name is not qualified by any reference to his position with DBK Consultants, Inc., nor does the signature line indicate any qualifier such as "by".[1] Mrs. Tabor was not a signatory on either Note.

### C. *The Claim of Harry Cummings*

Harry Cummings ("Cummings") has filed a proof of claim for an unsecured nonpriority claim in the amount of $41,-448.00 (the "Cummings Claim"). The Cummings Claim is broken down as follows: $7,000.00 for money loaned, $15,-000.00 (est.) for theft, $14,448.00 for conversion and $5,000.00 for "Pay Harry for Success". The proof of claim states that: "Suit has been filed against Mr. Tabor (CV 98–05–1939) and is on hold because of this bankruptcy. A better accounting of the Proof of Claim will be determined at the trial." With respect to the alleged loan amount, attached to the proof of claim are the faces of eight checks to "Don Tabor" signed by Cummings which aggregate to $7,000.00. However, unlike the Schumachers' proof of claim, there is no promissory note attached to the Cummings' proof of claim.

### D. *The Initiation of the Issue Regarding 11 U.S.C. § 109(e)*

On September 14, 1998, the Schumachers objected to confirmation of Debtors'

---

1. Schedule B of Debtors' Schedules indicates that Mr. Tabor's stock in DBK Consultants, Inc. has no value.

chapter 13 plan on the grounds, among others, that Debtors' noncontingent, liquidated, unsecured debts exceed the limitation under 11 U.S.C. § 109(e) for eligibility to file a chapter 13 case. On September 15, 1998, McClean, Etc., Inc., Dr. Michael M. Thomson and Thomson International, Inc., each of which filed a proof of claim on November 30, 1998, moved to dismiss Debtors' case and objected to confirmation of Debtors' chapter 13 plan on those, among other, grounds.[2] On September 21, 1998, the Schumachers filed a motion to dismiss Debtors' chapter 13 case on those grounds.[3]

On January 5, 1999, the Trustee filed an objection to the confirmation of Debtors' second amended chapter 13 plan in which the Trustee also raised the issue of Debtors' ineligibility to file a chapter 13 case because of Debtors' excessive unsecured debt, and on January 22, 1999, the Court set a briefing schedule regarding whether or not Debtors exceeded the debt limits to file a chapter 13 case. On March 12, 1999, the Trustee filed a brief in response to that Order, in which response the Trustee also moved for dismissal of Debtors' case because Debtors exceeded the unsecured debt limit for filing a chapter 13 case. Debtors did not file a brief on the issue. In response to Debtors' contention that their noncontingent, liquidated, unsecured debt did not exceed the threshold to file a chapter 13 case, the Court held an evidentiary hearing on March 17, 1999 which focused on whether or not Donald Tabor acted in good faith when he scheduled the Schumacher Claim as a contingent, unliquidated and disputed claim in the amount of $78,000.00 and the Cummings Claim as a contingent, unliquidated and disputed claim in the amount of $1000.00.

2. Debtors listed none of these parties on Schedule F.

3. Although the Schumachers have not withdrawn this motion, they have not pursued it. Debtors were engaged in settlement discussions with the Schumachers post-petition which resulted in Debtors proposing a second

### E.  The Testimony of Donald Tabor

At the evidentiary hearing, Donald Tabor stated that Todd Schumacher was the manager of Talmadge Fitness Center for seven years and that Kurt Schumacher is the brother of Todd Schumacher. Mr. Tabor further testified that Mr. Tabor used the money loaned by the Schumachers for the Talmadge Fitness Center. Mr. Tabor stated that DBK Consultants, Inc. ("DBK") was a consulting business, of which Mr. Tabor was the president, sole owner and sole employee, and that DBK was unrelated to the fitness business.

With respect to the $78,000.00 amount of the Schumacher Claim set forth in Debtors' Schedules, Mr. Tabor explained that, after the Schumachers filed a lawsuit to collect on the Notes, in which Mr. Tabor was named as one of the defendants, the Schumachers and Mr. Tabor engaged in settlement discussions. The parties discussed dismissing Mr. Tabor from the Schumachers' lawsuit in exchange for Mr. Tabor paying $78,000.00 to the Schumachers. However, Mr. Tabor acknowledged that he could not afford to pay $78,000.00 to the Schumachers and that the proposed settlement was not concluded. No written settlement agreement, nor any other evidence that the Schumachers had agreed to reduce their claims against Mr. Tabor, was produced at the evidentiary hearing.

With respect to the Cummings Claim, Mr. Tabor denies that he owes any money to Cummings. Mr. Tabor explained that in early 1997, he was associated in a business, called "Success Staffing," with Cummings. Mr. Tabor attempted to organize a new business which would include Cummings' participation, called "Performance Staffing Systems." Mr. Tabor and Cum-

amended chapter 13 plan which would provide the Schumachers with a lien against Debtors' residence to secure $25,000 of the Schumachers' otherwise unsecured claim. This particular provision drew an objection from the Trustee and does not appear in Debtors' third amended chapter 13 plan.

mings signed an agreement to establish Performance Staffing Systems as a temp-to-hire corporation to place employees into jobs (the "Agreement"). [Cummings Exhibit 1] Mr. Tabor testified that after the Agreement was signed, Cummings refused to honor the Agreement. In or about May 1997, allegedly because Cummings refused to honor the Agreement, Mr. Tabor decided to end his business association with Cummings and began to operate Performance Staffing Systems without Cummings.

At the evidentiary hearing, Cummings represented to the Court that employees of Success Staffing resigned from Success Staffing and joined Performance Staffing Systems. Cummings asserts that Success Staffing lost clients as a result of the departure of these employees. A letter from Cummings to Officer Sean McAleese of the Hudson Police Department which is attached to Cummings' proof of claim states that the departing employees copied files of Success Staffing and took other materials from Success Staffing when they left. In addition, in a lawsuit filed by Cummings against Mr. Tabor and others, Cummings alleges that Mr. Tabor breached the Agreement by refusing to issue stock in Performance Staffing Systems to Cummings and by refusing to honor other aspects of the Agreement. That lawsuit did not name Mrs. Tabor as a defendant. [Debtor's Exhibit 1]

After Mr. Tabor ended his association with Cummings, Mr. Tabor met with Cummings' counsel regarding Cummings' allegations against Mr. Tabor. At that meeting, Cummings' counsel suggested that Mr. Tabor might be able to pacify Cummings if Mr. Tabor paid Cummings $1,000.00, and Mr. Tabor made such an offer. However, Cummings did not accept that offer, and after the meeting with Cummings' counsel, Cummings filed the lawsuit naming Mr. Tabor as one of the defendants. No written settlement agreement with Cummings was produced at the evidentiary hearing.

## II. CONCLUSIONS OF LAW

### A. *The Limitation on Unsecured Debt to Be a Debtor Under Chapter 13*

Section 109(e) provides that only an individual that owes on the date of the filing of the petition noncontingent, liquidated, unsecured debts of less than $269,-250 may be a debtor under chapter 13. 11 U.S.C. § 109(e). In *Comprehensive Accounting Corp. v. Pearson (In re Pearson),* 773 F.2d 751, 757 (6th Cir.1985) the Sixth Circuit Court of Appeals held that "[c]hapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith."

The Bankruptcy Code does not provide a definition for the terms "contingent" or "noncontingent". However, it is well settled that "a debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition." *Nicholes v. Johnny Appleseed of Washington (In re Nicholes),* 184 B.R. 82, 88 (9th Cir. BAP 1995). *See also In re Redburn,* 193 B.R. 249, 259 (Bankr. W.D.Mich.1996). The Bankruptcy Code similarly provides no definition for "liquidated" or "unliquidated". However, the generally accepted standard is that a debt is liquidated if it is subject to "ready determination and precision in computation of the amount due." *In re Pearson,* 773 F.2d at 754; *In re Nicholes,* 184 B.R. at 90–91; *In re Redburn,* 193 B.R. at 257–58. Although a debtor may dispute a claim, the disputed status of a claim that is otherwise noncontingent and liquidated is not a basis to exclude it from the § 109(e) jurisdictional calculation. *In re Nicholes,* 184 B.R. at 91 ("So long as a debt is subject to ready determination and precision in computation of the amount due, then it is considered liquidated and included for eligibility purposes under § 109(e), regardless of any dispute."); *In re Jerome,* 112 B.R. 563, 566–67 (Bankr.S.D.N.Y.1990) (holding that court not required to wait until debtor's

objection to proof of claim was determined to assess debtor's eligibility pursuant to § 109(e) because "a disputed, unsecured claim is not excluded from the process of calculating the [§ 109(e) ] limitation."); *In re Hutchens,* 69 B.R. 806, 809 (Bankr. E.D.Tenn.1987) ("Disputed debts are not excluded when calculating eligibility for Chapter 13 relief unless they are also contingent or unliquidated.").

B. *Applying the Section 109(e) Debt Limitation*

1. *Mr. Tabor's Liability to Cummings*

■ The Cummings Claim is not contingent because all events which allegedly gave rise to Mr. Tabor's liability to Cummings occurred before the filing of the petition. However, the Cummings Claim is not liquidated. No pre-petition judgment had been rendered with respect to the Cummings Claim. As noted by Cummings' proof of claim, which states that a trial is required for the Cummings Claim to be accurately calculated, the Cummings Claim is not subject to "ready determination and precision in computation of the amount due." Therefore, the Cummings Claim should not be included when calculating whether or not Mr. Tabor's unsecured indebtedness exceeds the threshold for him to be a chapter 13 debtor.

2. *Mr. Tabor's Liability Under the Notes*

■ The Schumacher Claim arises from the Notes, which under Ohio law are initially viewed as ambiguous on their face with respect to Mr. Tabor's personal liability. The Notes are ambiguous because the name "DBK Consultants, Inc." appears above the signature lines of the Notes, but the Notes state "*I* promise to pay ..." [emphasis added] and Mr. Tabor's name appears below the signature lines and is not qualified by Mr. Tabor's position in DBK.

■ The relevant statutory authority regarding Mr. Tabor's personal liability under the Notes is § 1303.39(B)(2) of the Ohio Revised Code. Section 1303.39(B)(2) of the Ohio Revised Code provides in pertinent part that: "an authorized representative who signs his own name to an instrument ... *except as otherwise established between the immediate parties,* is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity...." ORC § 1303.39(B)(2) (emphasis added). "To the extent ambiguity exists, evidence of the parties' intent is necessary to resolve the issue of liability and to ascertain whether the parties intended personal liability or intended to bind the principal...." *Hamilton–Parker Co. v. Dillon Homes, Inc.,* No. 96APG08–1023, 1997 WESTLAW 128574, at *2 (Ohio Ct.App. Mar. 18, 1997), *citing Wise v. Duker,* 57 Ohio App.3d 62, 63, 566 N.E.2d 1248 (1988).

In this instance, Mr. Tabor's testimony indicated that the Schumachers intended that Mr. Tabor, rather than DBK, be liable under the Notes. The money loaned by the Schumachers was used for Talmadge Fitness Center, where Todd Schumacher worked for seven years. DBK was not related to the fitness center, but rather was a consulting company for which Mr. Tabor was the sole shareholder and sole employee. Because Mr. Tabor did not qualify his signature on the Notes and the maker of the Notes is referred to by the personal pronoun "I", the Court concludes that the indebtedness arising under the Notes is properly included when calculating whether or not Mr. Tabor's unsecured indebtedness exceeds the limitation for filing a chapter 13 case pursuant to 11 U.S.C. § 109(e).[4]

■ However, as to Karen Tabor, who also is named as a defendant in the Schumachers' lawsuit, the Schumacher Claim is

---

4. Mr. Tabor presented no evidence that DBK had authorized the borrowing from the Schu-

machers. His own testimony showed that the money was not used for or by DBK.

not liquidated. Unlike Mr. Tabor, Mrs. Tabor is not a promisor with respect to the Notes and thus her liability to the Schumachers is not subject to "ready determination and precision in computation of the amount due." Therefore, although the Schumacher Claim is relevant for evaluating whether or not Mr. Tabor's unsecured indebtedness exceeds the threshold for Mr. Tabor to file a chapter 13 case, it is not relevant for evaluating whether or not Mrs. Tabor's unsecured indebtedness exceeds the threshold for her to be a chapter 13 debtor.[5]

### 3. Calculation of the Schumacher Claim

■ Based on Mr. Tabor's testimony, the Notes and Debtors' Schedules, this Court holds that Debtors' provision of a $78,000.00 amount for the Schumacher Claim was not provided in good faith, but rather was provided in an attempt to bring Donald Tabor within the unsecured debt limit under 11 U.S.C. § 109(e). Although Mr. Tabor used the $78,000.00 figure because the Schumachers allegedly were willing at one time to dismiss Mr. Tabor from their lawsuit if he immediately paid them $78,000.00, Mr. Tabor admitted that he could not afford to pay that amount to the Schumachers and did not do so. Mr. Tabor produced no evidence of a final agreement to a settlement at that amount. Consequently, Mr. Tabor cannot legitimately contend that his liability on the Notes is limited to $78,000.00. Because Mr. Tabor has provided this Court with an inappropriate basis to use $78,000.00 as the amount of the Schumacher Claim, the Court will use the proof of claim filed by the Schumachers when calculating the amount of Mr. Tabor's noncontingent, liquidated, unsecured debt as of the filing date.[6]

### 4. Inclusion of the Schumacher Claim When Evaluating the Unsecured Debt Limit Under Section 109(e) of Donald Tabor

■ The Schumacher Claim arises from the Notes. Mr. Tabor's liability under the Notes can be readily determined based on the amount loaned, the accrued interest and any payments made to satisfy the debt. Therefore, for the purpose of assessing Mr. Tabor's eligibility under § 109(e), the debt to the Schumachers is liquidated. The Schumacher Claim is also noncontingent. Mr. Tabor's liability under the Notes was established once the Schumachers made the loans, and no further event was required to trigger Mr. Tabor's liability.

Because the Schumacher Claim is neither unliquidated nor contingent, the Schumacher Claim should be included when calculating whether or not Mr. Tabor's indebtedness exceeds the unsecured debt limit under § 109(e). When the Schumacher Claim, in the amount set forth in the Schumachers' proof of claim, is added to Mr. Tabor's other noncontingent, liquidated, unsecured debts listed in Debtors' Schedules, those unsecured debts total $326,170.22, thus exceeding the $269,250 maximum for Mr. Tabor to be a debtor under chapter 13. Consequently, pursuant to § 109(e), Mr. Tabor is ineligible to be a chapter 13 debtor.

■ Mr. Tabor's ineligibility to be a chapter 13 debtor under 11 U.S.C.

---

**5.** 11 U.S.C. § 302(a) provides for the commencement of a joint case by the filing with the bankruptcy court of a single petition by an individual that may be a debtor under such chapter and such individual's spouse. Individuals who file a joint case have separate estates, unless those estates are consolidated by the court. 11 U.S.C. § 302(b). Given that Mrs. Tabor appears to have regular income [Schedule I to Debtors' Schedules], and her scheduled noncontingent, liquidated, unsecured debt totals $27,563.89, which is less than the $269,250 maximum for chapter 13 eligibility, she is eligible to continue as a chapter 13 debtor, even if Mr. Tabor is ineligible as a result of his excessive noncontingent, liquidated, unsecured debt.

**6.** Debtors have not objected to the Schumachers' proof of claim, which is prima facie evidence of the validity and amount of the Schumacher Claim. Fed.R.Bankr.P. 3001(f).

§ 109(e) does not compel the dismissal of Mrs. Tabor as a chapter 13 debtor in the pending case. The impact of the ineligibility of one spouse on a joint chapter 13 case which could have been separately initiated by the other spouse appears not to have been addressed in any reported decision. However, when creditors have improperly initiated a joint involuntary case, the court has allowed the involuntary case to proceed by dismissing one spouse or allowing the commencement of a separate involuntary case against the second spouse. *King v. Fidelity Nat'l Bank,* 712 F.2d 188, 190–91 (5th Cir.1983); *In re Gale,* 177 B.R. 531 (Bankr.E.D.Mich.1995) (granting motion to sever involuntary petition filed against both husband and wife into two separate involuntary proceedings). Similarly, when a petition has been filed on behalf of an individual and a party who is neither a spouse nor an entity eligible to be a debtor, *i.e.,* a non-business trust, the court has allowed the case to proceed by dismissing the ineligible entity. *Hunt v. TRC Properties, Inc. (In re Hunt),* 160 B.R. 131, 136 (9th Cir. BAP 1993).

The Court cannot compel Mrs. Tabor to continue as a chapter 13 debtor. 11 U.S.C. § 303(a). However, if Mrs. Tabor chooses to proceed with this chapter 13 case despite the dismissal of Mr. Tabor, the Court will allow Mrs. Tabor to do so. Therefore, the Court shall, and hereby does, dismiss Mr. Tabor as a debtor in this chapter 13 case. Within one week from the date of this Order, Mrs. Tabor shall notify the Court, the Trustee, all her creditors and all other parties in interest as to whether or not she chooses to proceed with, or convert, this chapter 13 case despite the dismissal of Mr. Tabor. If she chooses to remain a chapter 13 debtor, Mrs. Tabor must file her proposed plan by April 16, 1999.

**IT IS SO ORDERED.**